No. 50,791

HENRY ENTERPRISES, INC., *Petitioner,* v. HON. LEWIS C. SMITH, Administrative Judge, Div. 6, Tenth Judicial District Court of Kansas, DENTCO SUPPLY AND MANAGEMENT COMPANY, INC., BROOKRIDGE GOLF AND COUNTRY CLUB, INC., and DAN HARLESS, *Respondents.*

(592 P.2d 915)

Opinion filed March 31, 1979.

*David K. Fromme,* of Weeks, Thomas, Lysaught, Bingham & Mustain, Chartered, of Overland Park, argued the cause and was on the brief for the petitioner.

*Michael G. Norris,* of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the respondent, Dentco Supply and Management Company, Inc.; *Barton Brown,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, argued the cause and was on the brief for the respondent, Brookridge Golf and Country Club, Inc.

The opinion of the court was delivered by

MILLER, J.: Are statements of witnesses, taken routinely by adjusters or investigators for insurance carriers upon receipt of claims or knowledge of potential claims under the policy, discoverable under K.S.A. 60-226(*b*)(1), or are such statements "prepared in anticipation of litigation or for trial" and thus discoverable only upon a showing of "substantial need" or "undue hardship" under K.S.A. 60-226(*b*)(3)? That is the issue before us in this mandamus action. The factual background and the history of this litigation are necessary to an understanding of the problem.

Brookridge Golf and Country Club, Inc., entered into a contract with Dentco Supply and Management Company, Inc., on August 16, 1977, for extensive repairs to the clubhouse roof. Dentco allegedly subcontracted the work to Henry Enterprises, Inc., and Dan Harless.

Ultimately, some work was done on the roof pursuant to the

contract. A dispute arose as to whether the work was completed and whether it was done properly. At this stage of the affairs, Allstate Insurance Co., Inc., an insuror of Henry Enterprises, Inc., heard that Brookridge was claiming damage arising from roofing repair work in which its insured was said to be involved. An adjuster for Allstate took a written statement from Glen Henry, principal officer and owner of Henry Enterprises, Inc., on February 2, 1978.

Dentco commenced action against Brookridge on February 10, 1978, to collect $17,762.50, which Dentco claimed was due it under the roofing repair contract. Brookridge answered, set up numerous defenses, and by counterclaim alleging negligence, breach of contract, fraud, and misrepresentation, sought substantial damages. Dan Harless and Henry Enterprises were joined as third-party defendants on August 25, 1978, by Dentco, which seeks indemnification and judgment over against Harless and Henry for any judgment Brookridge may recover against Dentco.

Dentco next requested the third-party defendant, Henry Enterprises, Inc., to produce and make available for inspection the statement of Glen Henry taken by the Allstate adjuster on February 2. Henry refused the request, and Dentco filed a motion to compel under K.S.A. 60-237(a)(2).

A hearing on the motion was held before the Honorable Lewis C. Smith at Olathe on January 19, 1979, all parties appearing by counsel. Mr. David K. Fromme, appearing on behalf of Henry Enterprises, Inc., opposed the motion. He stated:

"MR. FROMME:  I would like to state for the record that I am relying on 60-226(b) which states that a statement prepared in anticipation of litigation by or for another party or by or for that party's representative, including his insurer, can be discovered only upon showing of substantial need and if the proponent is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. *I make an offer of proof that the statement was taken the 2nd of February of '78 after notice of a claim was received, and in anticipation of litigation.*

. . . .

"I point out that 60-226(b) as it now reads was enacted after the Alseike case that completely changed the prior statute, specifically protecting the statements made in anticipation of litigation by or for an insurer or the insured. It is very specific and it is an enactment of the federal rule, and the cases under the federal rule that all hold that if you can take a man's deposition, then you cannot make the necessary showing." (Emphasis supplied.)

The trial court ruled as follows:

"THE COURT: It is a good scrap. . . .

"We are not playing games anymore. Let's see what is in the file and see what is there. That's the reason, my philosophy for it. I can appreciate your argument. I don't think that there is a claim ever filed with an insurance company that it isn't in anticipation of a suit. They are investigating to see whether they want to negotiate or whether they want to defend or what they want to do. So I think that that is a subterfuge for the meaning and the purpose of the legislature in liberalizing discovery. I appreciate your argument, but I think that you are wrong.

". . . I am going to order you to produce the statement . . . ."

A written order to produce the statement was filed.

Henry Enterprises then filed this action, seeking a peremptory writ of mandamus directing Judge Smith to set aside his order to produce and to overrule the motion to compel. Attached to the petition for mandamus is an affidavit of Rollie Sheldon, an Allstate employee who has personal knowledge of the facts leading up to and including the taking of the Henry statement. Mr. Sheldon says:

"During a portion of the year 1977, Allstate Insurance Company, Inc., was an insuror of Henry Enterprises, Inc., and received notification of an occurrence during the policy period involving claims by Brookridge Golf and Country Club, Inc., of damage arising from roofing repair work in which the insured, Henry Enterprises, Inc., or Glen Henry, the principal officer and owner thereof was claimed to have had some involvement. Thereafter, on February 2, 1978, an adjuster, contacted Mr. Henry and *in anticipation of litigation* arising from the roofing repairs, prepared a document for Mr. Henry's signature, containing a written statement of pertinent facts and circumstances for company records *to be used in reviewing and evaluating the claims and to be used by counsel employed to represent Mr. Henry in the event of litigation.*" (Emphasis supplied.)

The matter was argued by counsel and briefs were submitted. On February 6, 1979, we denied the request for a writ of mandamus by an order then entered, and we stated that a formal opinion would follow.

The 1970 amendments to the federal discovery rules may be traced directly to the case of *Hickman v. Taylor,* 329 U.S. 495, 91 L.Ed. 451, 67 S.Ct. 385 (1947) and the later cases which struggled with similar problems. *Hickman* dealt with the extent to which an opposing party might inquire into oral and written statements of witnesses which were secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen. The lawyer who took the statements in issue in *Hickman* was a member of a law firm which had been retained "to defend . . . against potential suits . . . and to sue the

railroad for damages . . ." *Hickman* did not deal with materials prepared in the usual course of business by non-lawyer employees; it dealt only with statements taken by a lawyer retained in a specific matter. Concisely stated, the decision held that statements taken and other information secured by a lawyer in the preparation of a case are not subject to discovery by opposing parties, absent any showing of necessity or that denial of production would prejudice the preparation of the opponent's case or cause hardship or injustice.

Original Rule 34 of the Federal Rules of Civil Procedure and K.S.A. 60-234, its Kansas counterpart, required a showing of good cause by a party who sought discovery of any documents. The good cause requirement was indeed a gray area. Good cause was interpreted in some instances to mean simply that the document was relevant, and in others to mean that the party seeking the discovery could not obtain the information by other means. The 1970 amendments to the Federal Rules of Civil Procedure rearranged the order of Rules 26-37, inclusive, pertaining to discovery, and attempted to eliminate the troublesome areas. The good cause requirement of Rule 34 was eliminated. The changes in the federal rules were incorporated into the Kansas rules of civil procedure as of January 1, 1973. K.S.A. 60-226(*b*)(1), paralleling Rule 26 (b) (1), F.R. Civ. P., makes ordinary documents routinely discoverable. K.S.A. 60-226(*b*)(1) and (3) form the basis upon which the dispute before us is premised. These provide in applicable part as follows:

"(*b*) *Scope of discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows: (1) *In general:* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .

. . . .

"(3) *Trial preparation: Materials.* . . . [A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection (*b*)(1) of this section and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insuror, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impression, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Commenting on the changes in K.S.A. 60-226, Judge Gard, in his Kansas Code of Civil Procedure, 1977 Supp., says:

"This section was amended comprehensively . . . by order of the Supreme Court on July 20, 1972, to become effective January 1, 1973. The purpose of the amendments was to make the section conform to the amendments of the Federal Rules of Civil Procedure as amended in 1970 pertaining to discovery.

. . . .

"The amendments . . . make a number of changes in Kansas procedure, or, at least, they eliminate confusion that has heretofore existed with respect to some of the provisions of the original section. . . .

. . . .

"The effect of the new rule is sensible and realistic in that it makes discovery of work product subject to the rule of Hickman v. Taylor, 329 US 495, 91 L Ed 451, 67 S Ct 385, which makes disclosure depend on need which outweighs the public policy consideration of protecting the product of trial preparation. But inquiry into 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation,' is protected from discovery, except that expert opinion is discoverable as provided in subsection (b) (4).

. . . .

"See Alseike v. Miller, 196 K 547, 412 P2d 1007, holding that under subsection (b) of this section statements taken by a claims adjuster on behalf of the insurance carrier of an assured involved in an automobile collision, not taken under the supervision of an attorney in preparation for trial, are not protected from discovery." (pp. 45-46.)

8 Wright & Miller, Federal Practice and Procedure: Civil, comments on the 1970 change in Federal Rule 26 as follows:

"The rule will cause no drastic change in practice in the federal courts. *It is an accurate codification of the doctrine announced in the Hickman case* and developed in later cases in the lower courts. . . . [O]n the whole the rule is a codification of doctrine rather than a change in doctrine. (§ 2023, p. 193.) (Emphasis supplied.)

. . . .

"Prior to the 1970 amendment some cases held that statements obtained by claim agents and investigators had the same protection given to attorneys. Other cases thought that the work product rule was based on the unique place of the attorney in the adversary system and refused to extend the protection to these nonlawyers. But if statements of witnesses are to be protected from discovery at all, the protection should not depend on who obtained the statement. Accordingly the 1970 amendment expressly extends protection to documents prepared by or for a representative of a party, including his agent.

"The 1970 amendment also resolves some disagreement in the cases about material obtained by a party's indemnitor. It has always been clear that an attorney retained by an insurance company to represent a party enjoys the same immunity as an attorney retained directly by the party. Indeed in the Hickman case itself the lawyer involved was retained both by the tug owners and by their

underwriters. Rule 26 (b) (3) protects documents prepared for litigation by or for a party's representative, including his indemnitor or insurer. *Thus it will now be clear that a report from the insured to the insurer is within the immunity as also will be statements obtained by investigators for the insurer."* (§ 2024, pp. 204-206.) (Emphasis supplied.)

This latter part of the quoted material (as to statements obtained by investigators for the insurer) is not supported by any post-1970 case cited in Wright & Miller; to the contrary, all take an opposite view, at least as to documents originating before action is commenced. See 8 Wright & Miller, Federal Practice and Procedure: Civil, § 2024 (1978 pocket part) p. 62, n. 43. One of the cases there cited is particularly well reasoned and persuasive, though it deals with reports rather than statements of witnesses.

*Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D. Ill. 1972) involved a request for discovery of reports made by a marine surveyor hired by plaintiff's underwriter, Fireman's Fund. The reports were made some eleven months before suit was filed. The district judge ruled that the reports were prepared in the usual course of business and were discoverable. The memorandum opinion contains the following discussion which is germane to the issue before us:

"Based upon our review of the history of discovery practice under the Federal Rules prior to 1970 and the changes thereto . . . we conclude that the 1970 amendments to Rule 26 meant only to codify the rule of practice accepted by many courts that documents and investigative reports compiled by a non-attorney for an attorney and/or under his general direction in anticipation of litigation were protected from discovery absent the requisite showing of need. . . .

. . . .
"If the rule of practice . . . were as suggested by the plaintiff, i.e., that after a claim has arisen, litigation may be deemed a contingency and any document prepared after such a claim has arisen is prepared in anticipation of litigation as concerns Rule 26 (b) (3) irrespective of whether an attorney in the role of counsellor has been consulted, hardly any document authored by or for an agent of an insurance company could ever be discoverable without the showing of substantial need and undue hardship required by subsection (b) (3) of Rule 26. An insurance company by the nature of its business is not called into action until one of its insured has suffered some form of injury and has a potential claim against some other party and/or the insurer itself. At this point, the insurer must conduct a review of the factual data underlying the claim, presumably through the talents of agents or employees who summarize the data for middle- or upper-management, the latter deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter. The logical absurdity of the

plaintiff's position is that, under its theory, the amendments to the discovery rules which were believed to be a liberalization of the scope of discovery would be a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds. We do not believe that Rule 26 (b) (3) was designed to so insulate insurance companies merely because they always deal with potential claims. If this were true, they would be relieved of a substantial portion of the obligations of discovery imposed on parties generally that are designed to insure that the fact finding process does not become reduced to gamesmanship that rewards parties for hiding or obscuring potentially significant facts." (pp. 372-373.)

*McDougall v. Dunn,* 468 F.2d 468 (4th Cir. 1972) involves discovery of statements of witnesses taken by an insurance adjuster shortly after a collision and over two years before suit was filed. The circuit court held that the statements were secured by the claim adjuster in the regular course of his duties as an employee of the insurance company, and that they were relevant and discoverable. The *McDougall* court quoted and relied upon *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D. Ill. 1972).

The United States District Court for the Northern District of Georgia arrived at a similar conclusion in an action by a policyholder against its insurer. *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115 (N.D. Ga. 1972). That court said:

"[T]he evaluation of claims of its policyholders is the regular, ordinary and principal business of defendant insurance company. Most of such claims result in payment by the defendant; it can hardly be said that the evaluation of a routine claim from a policyholder is undertaken in anticipation of litigation, even though litigation often does result from denial of a claim. The obviously incongruous result of the position urged by defendant would be that the major part of the files of an insurance company would be insulated from discovery." (p. 118.)

The majority of the cases hold that unless the investigation made by an insurance carrier has been at the request or under the guidance of counsel, the investigation is conclusively presumed to have been made in the ordinary course of business and not in anticipation of litigation or in preparation for trial. The cases cited above are illustrative of that view; see also *Universal Vendors, Inc. v. Candimat Co. of America,* 16 Fed. Rules Serv. 2d 1329 (E.D. Pa. 1972); *Hopkins v. Chesapeake Utilities Corporation,* 300 A.2d 12 (Del. Super. 1972); *Brandywine Shoppe, Inc. v. State Farm Fire & Cas. Co.,* 307 A.2d 806 (Del. Super. 1973); *Conley v. Graybeal,* 315 A.2d 609 (Del. Super. 1974); *Fletcher v.*

*Meserve,* 20 Fed. Rules Serv. 2d 202 (D. Mass. 1975); *Rakus v. Erie-Lackawanna R. Co.,* 76 F.R.D. 145 (W.D. N.Y. 1977); and *Miles v. Bell Helicopter Co.,* 385 F. Supp. 1029 (N.D. Ga. 1974).

We have not overlooked those cases which hold that all statements and all information secured by an insurance carrier after the happening of a collision or occurrence which might give rise to a claim against it or its insured are "in anticipation of litigation" and thus discoverable only under Rule 26 (b) (3), our K.S.A. 60-226(*b*)(3). For example, see *Fireman's Fund Ins. Co. v. McAlpine,* ___ R.I. ___, 391 A.2d 84 (1978); *Almaguer v. Chicago, Rock Island & Pacific Railroad Co.,* 55 F.R.D. 147 (D. Neb. 1972); and for a criticism of both rule-of-thumb approaches, see *Spaulding v. Denton,* 68 F.R.D. 342 (D. Del. 1975).

There is no contention that evaluative materials are contained in the statement of Glen Henry, which is the subject of the case before us. We have, therefore, no issue as to the protection to be afforded a claim adjuster's or a lawyer's mental impressions, opinions, conclusions, legal theories, comments, or appraisal of the claim.

The facts surrounding the taking of Glen Henry's statement are spelled out in the Sheldon affidavit, quoted above. The plaintiff's insuror, Allstate, received notification in 1977 "of an occurrence . . . involving claims by Brookridge . . . of damage arising from roofing repair work in which the insured . . . was claimed to have had some involvement." In other words, Allstate heard that Brookridge might have a claim against Henry Enterprises, Allstate's insured, arising out of some roofing repair work which might have been performed by Henry. Allstate proceeded to take a statement from the principal officer of the insured "to be used in reviewing and evaluating the claims and to be used by counsel employed to represent Mr. Henry in the event of litigation."

Obviously, Allstate took the statement for two reasons. First, Allstate did not know whether Henry Enterprises actually performed the work which gave rise to the damage claims; it did not know the details of the work; it did not know whether damage had in fact occurred. Presumably Allstate might have some exposure under its policy, depending upon the facts. Allstate needed information in order that it might properly review and evaluate any claims which might be made later by Brookridge or others.

Second, and in the event that suit was filed, the statement would be of use to counsel employed to defend the claim.

We are not unmindful that, insofar as insurance companies, and particularly those in the casualty field, are concerned, litigation is a very real potential; it is ever on the horizon. But the fact remains that the investigation of potential claims is an integral part of the insuror's business. Investigations are made regularly and in the ordinary course of business. They are necessary if the companies are to make intelligent dispositions of claims. They are necessary also if a carrier is to perform adequately the duties and obligations towards its insureds which are imposed upon it by law. Also, most claims are settled, one way or another, without resort to the courts.

It is apparent to us, and we hold, that the initial investigation of a potential claim, made by an insurance company prior to the commencement of litigation, and not requested by or made under the guidance of counsel, is made in the ordinary course of business of the insurance company, and not "in anticipation of litigation or for trial" as those terms are used in K.S.A. 60-226(b)(3). Statements of witnesses taken during the course of such initial investigations are therefore subject to discovery under K.S.A. 60-226(b)(1).

The writ of mandamus sought by the petitioner is denied.

FROMME and HERD, JJ., not participating.