**David BURTON, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO CO., and the American Tobacco Co., Defendants.**

**No. 94–2202–JWL.**

United States District Court,
D. Kansas.

Dec. 23, 1997.

Kenneth B. McClain, Gregory Leyh, Nicholas E. Mebruer, Humphrey, Farrington & McClain, Independence, MO, for Plaintiff.

Warren McCarnish, Williamson & Cubbison, Kansas City, KS, Junius C. McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A.

Nims, Paul G. Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, for R.J. Reynolds Tobacco Co., Inc.

Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke LLP, New York City, for American Tobacco Co.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is presently before the court on a motion by defendant R.J. Reynolds (RJR) for review of the orders by which Magistrate Judge Ronald C. Newman ruled on plaintiff's motion to compel (Doc. 286). Plaintiff originally moved to compel production by RJR of 33 documents related to Council for Tobacco Research (CTR) special projects (Doc. 214). By Memorandum and Order filed May 1, 1996, this court ordered an *in camera* review of the documents pursuant to the attorney-client privilege and work-product immunity doctrines, and it referred the motion to compel to Magistrate Judge Newman (Doc. 245). *Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134 (D.Kan. 1996). On February 3, 1997, Judge Newman issued a Memorandum and Order finding that only one of the documents, Tab 4, was privileged and ordering production of the remaining documents (Doc. 263). *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481 (D.Kan.1997). On August 15, 1997, Judge Newman denied RJR's motion for reconsideration (Doc. 283). *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321 (D.Kan.1997).

RJR now moves this court for review of Judge Newman's orders with respect to 30 of the documents.[1] For the reasons set forth below, the court grants the motion for review in part and denies it in part. The motion is granted with respect to the redacted portion of Tab 9, which the court finds is protected by the attorney-client privilege. The motion is denied with respect to the other documents at issue, and the court orders that those documents be produced.[2]

### I. Standard of Review

■■■ A district court's review of a magistrate's orders as to non-dispositive pretrial matters is governed by 28 U.S.C. § 636(b)(1)(A). Under that provision, the district court does not conduct a *de novo* review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate's order is "clearly erroneous or contrary to law." *Id.*; Fed.R.Civ.P. 72(a); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)); *see also Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991) ("Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if this discretion is clearly abused.")[3]

---

1. As stated above, Judge Newman found that Tab 4 was protected by the attorney-client privilege. RJR has withdrawn its objection to the production of Tab 8, and it does not seek review of the orders with respect to Tab 1. RJR has also withdrawn its objection with respect to the redactions on page 5345 of Tab 5 and page 7731 of Tab 6; the present motion does not address, however, an additional redaction in those two documents.

2. The court declines RJR's invitation in footnote 2 of its supporting brief to reconsider its ruling concerning preemption of plaintiff's concealment claim; that issue is not properly raised in this fashion.

3. Thus, because the court must employ a deferential standard of review, its review is not "plenary", as RJR insists. Moreover, the court's review is further limited by the specific objections raised in the motion for review. *See* Fed.R.Civ.P. 72(a) (a party may file objections to the magistrate's order within ten days, and that party "may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made"); D.Kan.Rule 72.1.4 (objections under rule 72(a) shall be made by filing a motion to review the order in question); *International Surplus Lines Ins. Co. v. Wyoming Coal Ref. Sys.*, 52 F.3d 901, 904 (10th Cir.1995) (if a

## II. Scope of Referral

RJR first argues that Judge Newman's orders improperly exceeded the scope of the referral from this court. Specifically, RJR contends that the magistrate should not have considered whether the documents were protected by the attorney-client privilege or work product immunity, and that his review was confined to the crime-fraud issue and determining whether the documents contain evidence that RJR had knowledge that nicotine was addictive and failed to disclose such information. RJR argues that this court has already ruled, by way of its May 1, 1996 order, that the documents are privileged.

RJR is mistaken with respect to the scope of the referral. In its prior order, the court referred the entire motion to compel to the magistrate to determine whether the documents should be produced. The court did not irrevocably determine that the documents are privileged. The court only rejected plaintiff's general argument that the documents were not privileged because scientists and scientific issues were involved. The court specifically rejected that argument "based on evidence available at [that] time." The court had not reviewed the particular documents, and it was therefore forced to rely on the representations of RJR's counsel concerning the nature of the documents.

The court acknowledges that its prior order was not especially clear in this regard. Specifically, the court stated:

> As a result [of the court's finding of a prima facie case of fraud], the court deems it necessary to conduct an in camera review of Defendant Reynolds' 33 allegedly privileged CTR Documents to determine whether any of them indicate that the defendants knew during the relevant time period that nicotine was addictive and failed to disclose that information despite the CTR's public representation that it would make such disclosures to the public.

RJR relies on this passage in arguing that the in camera review of the documents—and thus, the scope of the court's referral to the magistrate—was limited. The court cleared up any possible confusion about the scope of the referral, however, at a telephone conference on RJR's motion for reconsideration of the court's May 1, 1996 order. The conference was conducted on the record on June 17, 1996. In that conference, the court explained that the magistrate would determine the manner in which the parties could present additional argument. The court then clarified that the entire motion to compel, including the issue of the privileged status of the documents, was before the magistrate. The court stated:

> [A]gain, the issues of whether the documents were privileged at all, that is, whether they actually constituted advice to a client, for example, or whether they constituted work-product type information, was dealt with [in the prior order] only in generalities, in terms of accepting the representation of [RJR] that that's what these documents were and rejecting the Plaintiff's position that, for example, law and science don't mix or the fact that lawyers were somehow involved automatically disqualifies these documents from protection. At this stage, the motion is in front of the Magistrate. . . .

In addressing the scope of the referral in his second order, Judge Newman noted the court's statements in the telephone conference, the court's referral of the entire motion, and the court's having ruled only generally on the issue of privilege without having seen the documents and relying solely on counsel's representations. The magistrate correctly concluded that this court did not intend to foreclose consideration of whether the documents were protected by the attorney-client privilege or work product immunity in the first place.

RJR also argues that the magistrate's consideration of the existence of the privilege or immunity went beyond the issues raised by plaintiff in his motion to compel. The court concludes that plaintiff did raise the issue of whether the documents are protected; plaintiff specifically argued that the documents lacked a sufficient nexus to litigation or legal advice.[4]

party fails to file an objection under rule 72(a), it waives the right to appeal on that basis).

4. It is odd that RJR argues on the one hand that plaintiff did not raise this issue, while arguing on

■ RJR also seeks review of the magistrate's denial, in his August 15 order, of RJR's March 3, 1997 motion to submit additional materials and argument *in camera.* RJR argues that it had no notice of the magistrate's "broadened inquiry" into the protected status of the documents until Judge Newman's February 3 order and that it should therefore have been permitted to make further submissions on that issue. In the alternative, RJR seeks to submit the additional materials to this court.

The court denies the relief requested. RJR has not shown that it did not have adequate opportunity to submit evidence or argument on this issue. RJR has not shown that it attempted to provide the additional material until its motion in March of 1997, *after* the magistrate's initial order. As stated above, the court made clear in June of 1996 that the magistrate was free to consider whether the documents were protected· by privilege or immunity. The glaring omission of any discussion of that telephone conference in RJR's papers is telling; despite plaintiff's citation to the transcript of that hearing in his responses to the motion for reconsideration and this motion, as well as Judge Newman's reliance on that same transcript in his August 15 order, RJR has stubbornly refused to address, in any of its many briefs, why that hearing did not afford it adequate notice of the scope of the magistrate's inquiry.

The court agrees with the magistrate that RJR has had ample opportunity—by way of its privilege log, its response to the motion to compel, and its argument to the magistrate— to provide materials in support of its assertion of the attorney-client privilege and work

product immunity. RJR did not attempt to provide additional materials for the magistrate's *in camera* review, even though it did submit a memorandum *in camera.* The court concludes that the magistrate did not clearly err in denying RJR's request. For the same reasons, the court denies RJR's request to submit the materials at this time.

### III. Discussion

#### A. Attorney–Client Privilege / Scientific Issues

■ RJR contends that the magistrate erroneously concluded that Tabs 10–33 are not protected because they "deal with scientific issues." The magistrate did not, however, find that the documents were not protected simply because they involved scientific issues. The magistrate reviewed each document in Tabs 10–33 and concluded that RJR had not shown the necessary nexus to litigation or legal advice with respect to any of those documents.[5] In this regard, the court stresses that not all communications to or from counsel are privileged; rather they must relate to legal advice.[6] RJR argues that each document need not necessarily contain evidence on its face that it involves the giving or requesting of legal advice. Some such evidence must be proffered, however, and the magistrate did not clearly err in finding that RJR failed to satisfy that burden.

The court rejects RJR's contention that the documents are sufficiently linked to legal advice because the CTR special projects were pursued specifically for litigation purposes. Such a general intention does not mean that every single document related to a

the other that the court already addressed and resolved the issue of privilege when it rejected plaintiff's argument about the documents' relation to scientific issues.

5. The court will not repeat in this opinion the general statements of the law concerning the attorney-client privilege and work product immunity that were set forth in the prior orders of this court and the magistrate, except to the extent that the court addresses specific legal arguments raised by RJR.

6. RJR cites to *In re Ford Motor Co.,* 110 F.3d 954 (3d Cir.1997), and *United States v. Chen,* 99 F.3d 1495 (9th Cir.1996), *cert. denied,* —— U.S. ——,

117 S.Ct. 1429, 137 L.Ed.2d 538 (1997). Each of those cases, however, makes clear that the communication must be for the purpose of legal advice for the attorney-client privilege to attach. *See Ford,* 110 F.3d at 965; *Chen,* 99 F.3d at 1501. RJR points in particular to the statement in *Chen* that if a lawyer is hired for advice, there is a rebuttable presumption that the lawyer was hired specifically as a lawyer. *Chen,* 99 F.3d at 1501–02. The issue here, however, is not whether RJR retained its counsel specifically as lawyers, but whether a particular communication was made for the purpose of giving or receiving legal advice.

special project constitutes a communication for the purpose of giving or receiving legal advice. The magistrate did not clearly err in finding, after reviewing the individual documents, that the particular communications therein were not related to legal advice, but were made for other purposes.

RJR has also addressed specifically the magistrate's rejection of its assertion of the attorney-client privilege with respect to Tabs 10–15, 21, and 25–32.[7] Tabs 10–15 are letters or memoranda from counsel to other counsel for tobacco companies regarding the funding of certain CTR special projects. The documents describe the projects in general terms, give the status of the projects, and either recommend funding the project or note the project's request for funding. RJR argues that the documents relate to legal advice because they are authored by attorneys and because the CTR special projects were funded for litigation purposes. RJR does not point to any specific evidence, however, that the documents were created to give legal advice instead of for general business purposes, nor do the documents themselves evidence the necessary link.[8] The magistrate did not clearly err in finding that Tabs 10–15 were not privileged.

The court also rejects RJR's specific challenge regarding Tab 21. Tab 21, dated September 21, 1967, is the minutes of a meeting of the Industry Technical Committee with CTR representatives. The minutes were prepared by an RJR employee and sent to in-house counsel. The magistrate found that the document does not indicate that it was for the purpose of legal advice, but rather was only for the purpose of keeping counsel informed. RJR relies on *Hercules Inc. v.*

*Exxon Corp.,* 434 F.Supp. 136 (D.Del.1977), in arguing that a communication made for the purpose of keeping counsel informed may be privileged. The *Hercules* court stated that a communication intended to keep the attorney apprised of continuing business developments *with an implied request for legal advice based thereon* may be protected. *Id.* at 149. The court also noted that a communication is not privileged if made in the routine course of business without a request for legal advice. *Id.* at 145. Here, there is no indication that the routine report made in Tab 21 sought legal advice. Accordingly, the magistrate did not clearly err in finding that the document is not privileged.

Tabs 25–30 are drafts of a paper prepared to respond to a report by the Tobacco Group of the European Economic Community Consumer Consultative Committee.[9] The drafts were prepared by an attorney and sent to employees of tobacco companies, including counsel. RJR asserts that the author "was clearly engaged in rendering 'legal advice.'" The court disagrees, and it concludes that the magistrate did not clearly err in finding that the documents were not related to legal advice but were for the public relations purpose of responding to an unfavorable report.

Tab 31 is a set of handwritten notes by an attorney concerning an industry trade association meeting attended by attorneys and scientists. The notes relate the status of current research projects, revised proposals, and other projects. RJR argues that the document is infused with legal concerns. The court concludes that the magistrate did not clearly err in finding that the notes do

7. Although the magistrate also ruled that Tab 19 was not protected by the attorney-client privilege, RJR has not addressed any specific arguments to the magistrate's consideration of that document. Nevertheless, the court has reviewed Tab 19 and concludes that the magistrate did not clearly err in finding that that document does not relate to legal advice.

8. RJR cites to *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355 (10th Cir.1997), in arguing that the Tenth Circuit has noted that Kansas takes a broad view of the attorney-client privilege. In *Sprague,* the Tenth Circuit stated that Kansas has adopted the "broader rule" that a communica-

tion is protected even if does not reveal confidential information from the client. *Id.* at 1370–71. The broader approach with respect to confidentiality still requires that the communication have been made in the course of giving legal advice. *Id.* Thus, *Sprague* does not suggest that Kansas takes a broad view of the attorney-client privilege with respect to the requirement that the communication relate to legal advice.

9. The court has addressed RJR's specific arguments with respect to Tabs 25–32 even though RJR raised those specific arguments only in its reply brief.

not reveal or constitute communications related to legal advice.

Tab 32, dated November 15, 1978, is a set of handwritten notes made by an RJR employee at a trade industry meeting attended by attorneys and others. The notes reflect comments about the CTR's role and effectiveness. The magistrate did not clearly err in finding that the document related to public relations and not to legal advice.

Accordingly, the court concludes that the magistrate did not clearly err in finding that the documents within Tabs 10–33 for which RJR asserted the attorney-client privilege are not in fact privileged.

### B. Work Product Immunity

■ RJR next challenges the magistrate's finding that the documents at Tabs 16–20, 22–24, and 33 are not protected by work product immunity. The magistrate found that there was no evidence that the documents were created in anticipation of any particular litigation. RJR argues that work product immunity applies because the CTR special projects generally were for the purpose of litigation.[10] RJR points to its evidence that it was involved in a number of lawsuits at the time the documents were created.[11] RJR argues that the documents need not show their relation to a particular lawsuit on their face.

■ The court agrees with the magistrate that RJR was required to show that these particular documents are linked to some particular anticipated litigation. It is not necessary that such evidence be contained in the documents themselves. The only evidence cited by RJR, however, indicates that the CTR was generally intended for litigation purposes and that there were a lot of lawsuits filed against RJR. Such evidence is not sufficient. Even if there is a general prospect of litigation, a document is not protected by work product immunity if the document was prepared merely in the

regular course of business. 8 Charles A. Wright, et al., *Federal Practice and Procedure* § 2024 (1994). The advisory committee for the work product rule specifically stated: "Materials assembled in the ordinary course of business ... or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed. R.Civ.P. 26(b)(3) adv. cmtee. note.

In this respect, RJR and the CTR are in the business of litigation. Accordingly, documents prepared in the ordinary course of that business of litigation without a tie to specific litigation is not protected by work product immunity. The court agrees with the following statement of this principle by the Fourth Circuit:

> We take notice of the fact that members of society tend to document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes. And because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet, the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity. The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.

*National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (citation omitted). Here, RJR did not link the particular documents to any particular claim or anticipated claim.

The court's interpretation of rule 26(b)(3) is further supported by the decision in *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir.1987). There the Eighth Circuit concluded that a manufacturer's risk-management documents, which were created to anticipate

---

**10.** RJR has not raised any arguments about the applicability of the work product immunity to a specific document.

**11.** RJR stresses here, as it does throughout its briefs, that plaintiff has not contested the materi-

als it has submitted. The fact that plaintiff has not raised specific objections to those materials does not mean that the materials provide the necessary evidentiary support.

product liability litigation costs for business planning purposes and which contained aggregate case reserves and litigation expenses, were not created in anticipation of litigation under rule 26(b)(3). *Id.* at 401. The court noted that the manufacturer's business involved litigation and that a corporation may engage in business planning on many fronts, including litigation. *Id.* Similarly, in *Henry Enterprises v. Smith*, 225 Kan. 615, 592 P.2d 915 (1979), the court held that statements collected by an insurance company's investigator were not collected in anticipation of litigation for purposes of work product immunity where an actual claim had not yet been filed because litigation is always a potential and is a part of the insurance company's business. *Id.* at 623, 592 P.2d 915; *see also Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 203 (M.D.Fla. 1990) (immunity does not protect insurer's claims manuals that set out guidelines for evaluating claims because they were created in the ordinary course of business and not in anticipation of specific litigation).[12]

The court agrees with the magistrate that RJR has failed to show that the particular documents were created in anticipation of any particular litigation, and not for the prospect of litigation generally. Therefore, the court concludes that the magistrate did not clearly err in finding that the documents are not protected by work product immunity.

### C. Redactions

RJR also takes issue with the magistrate's rulings concerning Tabs 2, 3, 5, 6, 7, and 9. RJR produced those documents to plaintiff in redacted form, claiming that certain portions were protected by privilege or immunity.

RJR first argues that the magistrate erred when he stated that none of these documents was a communication to or from counsel; RJR notes in that regard that each document was "distributed" to RJR's in-house counsel. The court notes, however, that the magistrate considered each individual redaction and did not base his findings solely on the fact that the documents themselves were not communications to counsel.

█ RJR has also raised arguments related to the particular documents. The portion redacted from Tab 2 relates that a draft work statement for a proposed study was submitted to in-house counsel for legal input. The magistrate did not clearly err in finding that the excerpt, which relates only the fact of a communication with legal counsel, was not privileged.

█ The redacted portion of Tab 3 concerns a meeting involving RJR's legal department to discuss the legal implications of SARA, a federal law. RJR has not challenged the magistrate's ruling that the excerpt is not protected by work product immunity; nevertheless, the court concludes that the magistrate did not clearly err in so finding.

█ RJR notes, however, that the magistrate failed to address its assertion of the attorney-client privilege with respect to the excerpt from Tab 3. The court's review of RJR's privilege log reveals that RJR asserted that the excerpt was protected by both the attorney-client privilege and work product immunity. The court thus agrees that the magistrate should have determined whether the excerpt from Tab 3 is protected by the attorney-client privilege. In the interest of judicial economy, however, the court will itself determine whether the excerpt is privileged, instead of remanding the matter to the magistrate for determination of this single issue. Accordingly, the court withdraws its referral to the magistrate with respect to this particular issue.

█ The court concludes that the excerpt from Tab 3 is not protected by the attorney-client privilege. Although the redacted portion indicates the general topic of discussion at the meeting, it does not reveal the substance of any communications between counsel and their client. The last sentence of the redacted portion relates the activities of an attorney; such information, however, is not protected by the attorney-client privilege.

---

12. *In re Ford Motor Co.*, cited by RJR, does not take a contrary position. There, the court stated that, although the document need not relate to the ongoing litigation that includes the discovery dispute, it must relate to *some* litigation. 110 F.3d at 967–68.

*See Burton,* 170 F.R.D. at 484; 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 1.26 (2d ed.1993) (privilege does not extend to the nature of the legal services rendered unless disclosure reveals the substance of an attorney-client communication).

■ The redacted portions of Tabs 5 and 6 are identical.[13] They relate the approval of a particular study by the Committee of Counsel and the expected timing of the study's initiation. RJR argues that the excerpts concern legal advice. The court concludes that the magistrate did not clearly err in finding that the excerpts relate only an act by counsel and not a communication and that the excerpts are therefore not privileged. The court reiterates that advice concerning CTR funding does not necessarily constitute legal advice.

■ The redacted portion of Tab 7 relates the fact of a meeting with counsel, the subject generally discussed at that meeting, the type of documents distributed at the meeting, an agreement concerning the pursuit of certain contracts, and the sharing of information. RJR argues that the excerpt concerns legal advice. RJR has not shown, however, that the activities related in the excerpt concerned legal advice rather than general business advice. Accordingly, the court concludes that the magistrate did not clearly err in finding that the excerpt is not privileged.

■ Finally, the redacted portion of Tab 9 relates the fact of a meeting with the legal department, the general subject of that meeting, the requirements of SARA, and an agreement reached with respect to those requirements. The court agrees with RJR that the excerpt is privileged. The description of the agreement reached at the meeting necessarily reveals the substance of advice given at the meeting concerning a legal matter, namely RJR's compliance with a federal law. The preceding portion of the excerpt relates to the agreement. Therefore, the court concludes that the magistrate did clearly err in finding that the excerpt from Tab 9

is not privileged. The court orders that the redacted portion is protected by the attorney-client privilege and need not be produced by RJR.

#### D. Joint Defense Privilege

In its motion for reconsideration, RJR argued that the magistrate erred by failing to protect Tabs 25–30 under the joint defense privilege. In its subsequent order, the magistrate stated that he had in fact applied the joint defense privilege and that he had not found a waiver of any privilege or immunity because of disclosure to a third party. RJR now notes this statement by the magistrate as to the applicability of the joint defense privilege, and it argues that that privilege "on its own is sufficient to protect the documents."

■ RJR again misapprehends the nature of the joint defense privilege and the magistrate's ruling. As the court explained in its May 1, 1996 order, under the joint defense exception, disclosure of privileged information to a third party does not constitute a waiver of the attorney-client privilege if the third party is counsel for an actual or potential co-defendant. This court and the magistrate did apply the joint defense privilege to the extent that they did not find that any privilege had been waived by disclosure to a third party. The magistrate found that Tabs 25–30 were not privileged because they did not relate to legal advice—not because the information was disclosed to third parties. Therefore, the application of the joint defense privilege does not bear on the court's review of the magistrate's findings concerning Tabs 25–30.

#### E. Other Cases

RJR argues that the magistrate should have followed the Fifth and Third Circuits and so ruled in favor of the tobacco company. *See Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996); *Haines v. Liggett Group, Inc.,* 975 F.2d 81

---

**13.** As noted above, RJR has withdrawn its objections to the production of the other material originally redacted from Tabs 5 and 6.

(3d Cir.1992). Neither case, however, supports RJR's argument that the magistrate clearly erred in finding that most of the documents are not protected.

In *Allgood,* the plaintiffs argued that they had satisfied the prima facie case requirement for purposes of the crime-fraud exception because the *Haines* district court had already determined the existence of a prima facie case; the Fifth Circuit rejected that argument, stating that "one court's finding of a prima facie case does not automatically make another court's rejection of the finding an abuse of discretion." *Allgood,* 80 F.3d at 172. The Fifth Circuit's decision is inapposite because it did not involve the determination at issue here—whether the documents are privileged in the first instance. This court has already determined that the crime-fraud exception applies here, and that ruling is not presently at issue. Moreover, *Allgood* actually undermines RJR's position to the extent that it rejects the notion that one district court should follow another court without exercising its own judgment.

Nor does the Third Circuit opinion in *Haines* aid RJR here. In that case, the Third Circuit vacated the district court's determination that the crime-fraud exception applied because the district court had considered evidence that had not been before the magistrate. *Haines,* 975 F.2d at 93–94. Again, the court did not address whether the documents were privileged in the first place. Of course, the magistrate here was not bound in any way by the decision of the special master in *Haines,*[14] but correctly conducted an independent review of the documents at issue here.

### F. Crime–Fraud Exception

■ RJR also challenges aspects of the magistrate's orders relating to the application of the crime-fraud exception to the attorney-client privilege. Invocation of the exception is not necessary here because the documents at issue are not privileged. The court will address RJR's concerns nonetheless.

The magistrate found that Tabs 21 and 23 "may contain evidence that RJR knew, during the relevant time period, that nicotine was addictive." The magistrate also found that Tab 32 "may contain evidence which may be relevant to the issue of RJR's knowledge of the effects of nicotine and RJR's actions or contemplated actions related thereto." RJR argues that these documents would not be discoverable under the crime-fraud exception because they do not also contain evidence that RJR concealed the knowledge it had. In that respect, RJR stresses that the studies from which it may have gained relevant knowledge were in fact published. RJR insists that because fraud requires both knowledge and concealment, a document must reveal both before it succumbs to the crime-fraud exception.

The court disagrees. Under Kansas law, the attorney-client privilege does not extend "to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort." K.S.A. § 60–426(b)(1). The Kansas Supreme Court has defined "sufficient evidence" for purposes of Kansas's crime-fraud exception as that which constitutes a prima facie case. *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisberg Grain Co.,* 250 Kan. 54, 61, 824 P.2d 933 (1992). In its May 1, 1996 order, the court found that plaintiff had introduced evidence, aside from the documents at issue, sufficient to establish a prima facie case of fraud by RJR in failing to disclose its knowledge that nicotine is addictive. Thus, the court concluded that the crime-fraud exception to the attorney-client privilege under Kansas law does apply here.

That conclusion does not end the court's inquiry, however. Plaintiff's establishing a prima facie case of fraud does not entitle him to disclosure of every single communication between RJR and its attorneys that would otherwise be protected by the attorney-client privilege. As stated by Judge Theis of this

---

**14.** In *Haines,* the district court adopted the special master's determination that almost all of the 1500 documents at issue were privileged, because the parties had not raised any objections to the special master's findings. *Haines v. Liggett Group, Inc.,* 140 F.R.D. 681, 697 (D.N.J.1992).

court in *In re A.H. Robins Co.*, 107 F.R.D. 2 (D.Kan.1985), in applying the crime-fraud exception under Kansas law: "This Court believes that the *prima facie* showing of crime or fraud cannot open defendant's files completely or give plaintiff[ ] carte blanche with respect to attorney-client communications." *Id.* at 15.

Although Kansas state courts have not addressed this issue, other courts agree that the determination of whether a communication loses its privilege under the crime-fraud exception thus requires a two-part inquiry: first, the crime or fraud must be established; second, the communication must have been in furtherance of—and therefore relate in some way to—the crime or fraud. *See, e.g., In re Grand Jury Proceedings*, 87 F.3d 377, 380 (9th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996); *In re Federal Grand Jury Proceedings, 89–10 (MIA)*, 938 F.2d 1578, 1581 (11th Cir.1991); *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986); *In re International Sys. and Controls Corp. Securities Litig.*, 693 F.2d 1235, 1243 (5th Cir.1982); *In re Sealed Case*, 676 F.2d 793, 814–15 (D.C.Cir.1982); *In re Grand Jury Proceedings*, 604 F.2d 798, 803 n. 6 (3d Cir.1979); *In re Murphy*, 560 F.2d 326, 338 (8th Cir.1977); *see also United States v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 2628, 105 L.Ed.2d 469 (1989) (communication must have been "in furtherance" of a crime or fraud); *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir.1995) (same), *cert. denied,* 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 781 (1996).

In fact, in its previous order, the court envisioned that the *in camera* review would accomplish the second step in the two-part test:

If the disputed communications cannot be considered in determining whether the exception to the privilege applies and the decision rests on the application of the *Wallace, Saunders* prima facie case test to the other existing evidence, then the purpose of an in camera review is not to help satisfy the burden of establishing the exception but, rather, to help determine whether the documents meet the substance of what the party seeking them has

averred and whether they are, thus, subject to production as a result.

Moreover, in the June 17, 1996 telephone conference, the court, in discussing the magistrate's review of the documents, noted that "there could well be documents among those 33 which simply have nothing to do with or do not show anything at all with regard to the crime-fraud exception and the extent to which I have indicated that the attorney-client privilege would be breached."

The next question concerns how related the communications must be to the crime or fraud for which a prima facie case has been shown. Again, Kansas state courts have not addressed this question. Other courts have adopted different standards. Paul R. Rice, *Attorney–Client Privilege in the United States* § 8.12 (1993 & Supp.1997); 1 Stone & Taylor, *supra,* § 1.65. For instance, for purposes of the crime-fraud exception under federal law, the D.C. Circuit, after noting that courts had disagreed on the degree of relatedness required, adopted a standard by which a document must "reasonably relate" to the subject matter of the possible violation. *In re Sealed Case*, 676 F.2d at 815. The Fifth Circuit has also adopted a "reasonable relationship" standard. *In re International Sys.*, 693 F.2d at 1243. The Eighth Circuit requires a "close relationship" to the scheme to commit crime or fraud. *In re Murphy*, 560 F.2d at 338. The Eleventh Circuit requires a showing that the attorney's assistance was obtained "in furtherance of the criminal or fraudulent activity or was closely related to it." *In re Federal Grand Jury Proceedings*, 938 F.2d at 1581. The Second Circuit has stated that a "purposeful nexus" must exist between the communication and the crime or fraud. *In re Grand Jury Subpoenas*, 798 F.2d at 34. The Ninth Circuit has stated that the communication must be "sufficiently related" to the crime or fraud, but it has not clarified further the necessary relationship. *In re Grand Jury Proceedings*, 87 F.3d at 383. Finally, the Tenth Circuit has on one occasion stated that for grand jury investigations under federal law a "potential relationship" between the documents and the charges is required. *In*

*re September 1975 Grand Jury Term,* 532 F.2d 734, 738 (10th Cir.1976).

 *In re A.H. Robins Co.* is the only published case to decide this question under Kansas law. In that case the court, after reviewing the standards applied by the Fifth and Eighth Circuits, held that "the memoranda in question must have a reasonable relation to the ongoing fraud to be discoverable under the crime or fraud exception." 107 F.R.D. at 15. The court agrees that Kansas would likely adopt a "reasonable relationship" standard, and it applies such a standard here. *See also In re Grand Jury Proceedings,* 835 F.2d 237, 238 (10th Cir. 1987) (noting that the district court—in the person of Judge Kelly of the District of Kansas—had applied a "reasonable relationship" standard; the Tenth Circuit did not reach the issue); *BP Alaska Exploration, Inc. v. The Superior Court of Kern County,* 199 Cal.App.3d 1240, 245 Cal.Rptr. 682, 701 (1988) (adopting *In re A.H. Robins Co.* rule requiring "reasonable relation" for purposes of California law); *In re Bairnco Corp. Securities Litig.,* 148 F.R.D. 91, 100 (S.D.N.Y. 1993) (adopting "reasonable relation" standard); *Pandick, Inc. v. Rooney,* 1988 WL 61180, at *3 (N.D.Ill. June 3, 1988) (requiring "reasonable relationship").

At least 30 of the original 33 documents do not contain any evidence related to RJR's perpetration of a fraud concerning the addictive nature of nicotine. Therefore, if those documents were privileged, they would not be discoverable under the crime-fraud exception. If Tabs 21, 23, and 32 were found to contain evidence of RJR's knowledge of nicotine's addictiveness—even without accompanying evidence of concealment—such evidence would be reasonably related to the alleged fraud and would therefore be subject to disclosure under the exception. Again, the particular document need not establish every element of the alleged fraud because the prima facie case has already been established and the exception has already been found to apply here.

RJR also disputes the magistrate's findings of evidence of knowledge with respect to the three particular documents. Tab 21 refers to "habituation" ascribable to nicotine. RJR argues that habituation is different from addiction. Nevertheless, the court concludes that the concepts are closely-enough related that such knowledge is relevant to whether RJR had knowledge of nicotine's addictive qualities as the term addiction is understood today, and that the document therefore reasonably relates to the alleged fraud. Accordingly, if Tab 21 were privileged, it would nonetheless be subject to disclosure under the crime-fraud exception.

RJR argues that Tab 23 actually refers to an animal study showing a *lack* of addiction to nicotine. The court concludes, however, that the magistrate did not clearly err in finding that Tab 23 does contain evidence of knowledge of addiction in humans. Thus, Tab 23 reasonably relates to the alleged fraud and would be subject to disclosure under the crime-fraud exception if the document were privileged.

With respect to Tab 32, the magistrate found that the document contains information related to contemplated actions with respect to the effects of nicotine. After reviewing the document, the court does not believe that Tab 32 reasonably relates to the alleged fraud involving nicotine addiction. Accordingly, the court concludes that Tab 32 would not be subject to disclosure if it were protected by the attorney-client privilege.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the motion by defendant R.J. Reynolds Co. for review of the magistrate judge's orders concerning the production of certain documents (Doc. 286) is granted in part and denied in part. The motion is granted with respect to Tab 9, and the court orders that the redacted portion of that document is privileged and need not be produced. The notion for review is denied in all other respects. Defendant R.J. Reynolds is ordered to produce all other documents to plaintiff in accordance with the magistrate judge's orders within 10 days of the filing of this order. Moreover, as contemplated in the May 1, 1996 Memorandum and Order, the court will schedule a status conference upon request of either party as soon as practicable after the documents have been produced to plaintiff, in order to put in place a new schedule for the completion of discovery

and all other deadlines necessary to bring this case to trial as promptly as circumstances will allow.

**IT IS SO ORDERED.**