**David BURTON, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO CO. et al., Defendants.**

No. 94–2202–JWL.

United States District Court, D. Kansas.

May 18, 2001.

664

Kenneth B. McClain, Nicholas E. Mebruer, Nimrod T. Chapel, Jr., Donald H. Loudon, Jr., Humphrey, Farrington & McClain, Independence, MO, Gregory Leyh, Kansas City, MO, for David Burton.

Kenneth B. McClain, Nicholas E. Mebruer, Nimrod T. Chapel, Jr., Donald H. Loudon, Jr., Humphrey, Farrington & McClain, Independence, MO, Gregory Leyh, Kansas City, MO, for Ora Burton.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, John C. Noonan, Teresa L. Clark, Stinson, Mag & fizzell, P.C., Kansas City, MO,Stanley D. Davis, Shook,

Hardy & Bacon, L.L.P., Kansas, City, MO, Junius C. McElveen, Jr., Jones, Day, Reavis & Rogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Jones, Day, Reavis & Pogue, Dallas, TX, Frank C. Woodside, III, Dinsmore & Shohl, LLP, Cincinnati, OH, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, KS, for R.J. Reynolds Tobacco Company, Inc.

James D. Griffin, Blackwell Sanders Peper Martin, LLP, Kansas City, MO, James M. Warden, Blackwell Sanders Peper Martin, LLP, Overland Park, KS, Frank C. Woodside, III, Dinsmore & Shohl, LLP, Cincinnati, OH, Mary-Jo Middelhoff, Dinsmore & Shohl, LLP, Cincinnati, OH, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke, LLP, New York City, Roger W. Warren, Sanders Conkright & Warren, LLP, Kansas City, MO, for American Tobacco, Co.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This matter is presently before the court on two motions—defendant R.J. Reynolds Tobacco Company's objections to and motion for review (doc. # 377) of Magistrate Judge O'Hara's February 27, 2001 order in which Judge O'Hara ruled on defendants' motion to strike allegedly privileged or otherwise protected documents from plaintiff's trial exhibit list and plaintiff's motion for sanctions, pursuant to 28 U.S.C. § 1927, against defendants' outside counsel (doc. # 380). As explained more fully below, defendant RJR's motion is granted in part and denied in part; plaintiff's motion is denied.

● **RJR's Motion for Review of Judge O'Hara's Order**

In ruling on defendants' motion to strike, Judge O'Hara found that only a handful of the 116 documents identified by plaintiff in his trial exhibit list were protected from use at trial by virtue of the attorney-client privilege, the work product immunity doctrine and/or the joint defense privilege. With re-

spect to the vast majority of the documents identified by plaintiff, Judge O'Hara rejected defendants' claims of privilege and/or protection. RJR now moves this court for review of Judge O'Hara's order with respect to 58 of the documents on plaintiff's trial exhibit list. In support of its motion, RJR contends that Judge O'Hara failed to provide specific reasons or specific findings that explain the basis of his denial of RJR's claims of privilege and protection and that Judge O'Hara incorrectly determined that both the attorney-client privilege and work product immunity doctrine require a nexus to anticipated or pending litigation. RJR requests that the court either reverse Judge O'Hara's rulings with respect to the 58 documents or remand the issue to Judge O'Hara with direction that he provide a reasonably detailed explanation for his rulings and apply the correct standards with respect to claims of attorney-client privilege and work product protection. For the reasons set forth below, the court grants in part and denies in part RJR's motion.

A district court's review of a magistrate judge's decision on a nondispositive pretrial matter is governed by 28 U.S.C. § 636(b)(1)(A). Under this provision, the district court may reconsider any pretrial matter where a party shows that the magistrate judge's order is clearly erroneous. *See Hutchinson v. Pfeil,* 105 F.3d 562, 566 (10th Cir.1997); Fed.R.Civ.P. 72(a). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Bearing this standard in mind, the court first addresses RJR's argument that Judge O'Hara incorrectly determined that the attorney-client privilege requires a nexus to anticipated or pending litigation. In support of its argument, RJR relies only on footnote 10 from Judge O'Hara's order. In that footnote, Judge O'Hara merely recites a portion of a prior opinion in this case, one authored by the late Magistrate Judge Newman, in which Judge Newman discussed privilege and protection

issues with respect to documents dealing with scientific research. In that regard, Judge Newman stated (and Judge O'Hara reiterated in footnote 10 of his recent order):

An analysis of scientific data may be the subject of a privileged communication. To establish that such communications are protected by the attorney-client privilege there must be a connection between the scientific information which is the subject of the communication and the rendering of legal advice. This is the missing link in most of the communications before the court.... Where work product immunity was claimed, there was a lack of any relationship between the scientific analysis and any identifiable litigation.... A party claiming work product immunity must still establish the underlying nexus between the preparation of the document and the specific ·litigation. There is no such nexus between the reviewed documents and pending litigation.

See Burton v. R.J. Reynolds Tobacco Co., 175 F.R.D. 321, 327–28 (D.Kan.1997); Judge O'Hara's Order at 13–14 n. 10. In his order, Judge O'Hara then stated, "Even upon consideration of the additional materials submitted ex parte, the Court is ·unpersuaded in this instance and, as shown below, in many other instances, that the required nexus has been established by defendants." Somehow, RJR construes this statement to mean that Judge O'Hara determined that the attorney-client privilege requires a nexus to pending or anticipated litigation. Judge O'Hara's statement does not support RJR's broad conclusion. In any event, the paragraph highlighted by Judge O'Hara from Judge Newman's prior decision specifically discusses not only the nexus between preparation of a document and specific litigation for work product immunity purposes but also the nexus between scientific information and the rendering of legal advice for attorney-client privilege purposes. At best, it is unclear from Judge O'Hara's statement whether he was referring to the required nexus in the work product immunity context, the required nexus in the attorney-client privilege context (a separate and distinct nexus from that described by Judge Newman for work product immunity purposes), or both. In short, the

court is simply not "left with the definite and firm conviction that a mistake has been committed." See United States Gypsum Co., 333 U.S. at 395, 68 S.Ct. 525.

Having rejected RJR's argument that Judge O'Hara applied incorrect standards in analyzing RJR's attorney-client privilege claims, the court now turns to RJR's primary objection—that Judge O'Hara failed to explain in any way the reasons underlying his specific conclusions regarding RJR's claims of work product immunity and attorney-client privilege. This objection is well taken, as a reviewing court cannot conduct any meaningful review of the issues presented unless the magistrate judge provides sufficient detail to elucidate the reasoning by which the magistrate judge reached his or her conclusions on factual or legal issues. See Joseph A. v. New Mexico Dep't of Human Servs., 69 F.3d 1081, 1087 (10th Cir. 1995) (to facilitate meaningful appellate review in Rule 52(a) context, district court not permitted to make general, conclusory or inexact findings). RJR correctly notes that for the vast majority of RJR's privilege and protection claims with respect to specific documents, Judge O'Hara simply stated in conclusory fashion that the "objections are overruled" without any elaboration or explanation of his conclusions. Thus, this court has checked Judge O'Hara's findings against the record with particular and painstaking care. See Holland v. Island Creek Corp., 885 F.Supp. 4, 6 (D.D.C.1995) (while the rulings of a magistrate judge are not to be set aside unless they are "clearly erroneous or contrary to law," where the "decision under review does not offer a reasoned explanation for its decision ... it is incumbent on the Court to check the adopted findings against the record 'with particular, even painstaking, care.'" (citations and quotations omitted)). In large part, the court affirms the findings of Judge O'Hara. With respect to a handful of documents, however, the court remands the matter to Judge O'Hara for consideration of RJR's claim of attorney-client privilege. The court's specific conclusions with respect to the documents are set forth more fully below.

● *Attorney–Client Privilege*

■ RJR requests that the court review Judge O'Hara's rulings with respect to 58 documents on plaintiff's trial exhibit list.[1] Of those 58 documents, RJR objected to 28 documents solely on the basis of the attorney-client privilege. The court begins, then, with a review of those 28 documents.[2] The attorney-client privilege protects confidential communications between an attorney and client which occur in the course of giving or requesting legal advice. *See Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D.Kan.1997). As set forth below, the court remands documents 74, 76 and 91 to Judge O'Hara for further consideration; the remaining documents are not privileged.

● Documents Written by RJR Lawyers

■ The subject matter of the communications in documents 58, 86, 88, 93, 94 and 98 is not related to seeking or giving legal advice but are related to public relations and public image issues. Thus, while these documents were all written or prepared by RJR attorneys (either inside or outside counsel), the documents make no reference to legal issues or the rendering of legal advice. Document 58, for example, is a draft of a position paper regarding carbon monoxide and cigarette smoking prepared for the purpose of responding to questions or rebutting criticisms stemming from certain (negative) FTC test results concerning the levels of carbon monoxide in commercial cigarettes. While the position paper was prepared by RJR's outside counsel, it was not prepared in the course of rendering legal advice. *See id.* at 489. It could have been prepared by scientists, tobacco industry non-legal personnel, or others with access to the non-legal literature cited in the paper. *See id.* In short, on its face the position paper was intended for public relations purposes rather than legal purposes. *See id.* Similarly, document 93, while prepared by outside counsel, is simply a collection of statements made by outside scientists that were gathered for RJR's

CEO's testimony at certain congressional hearings. Document 88 contains various sample questions and answers to be used as a resource for RJR employees when questioned about smoking and health issues. Document 98 is simply RJR's "policy on smoking and health." In short, documents 58, 86, 88, 93, 94 and 98 relate only to public image or relations issues (or, at the most, relate to general business purposes) and do not reflect the provision of any legal advice whatsoever.

■ Documents 99, 103 and 104 all relate to an individual named G. Robert DiMarco, RJR's Vice President of Research and Development during the relevant time period. These documents reflect RJR's concern about whether Mr. DiMarco's position concerning whether smoking caused cancer was consistent with RJR's position on that issue and RJR's efforts to ensure that Mr. DiMarco was "on board" with its position. The conversations and strategies reported in these documents are that of a business or public relations nature and not a legal nature. There is nothing in these documents concerning the legal implications, if any, of Mr. DiMarco's beliefs. Rather, the thrust of the documents is that it would simply look bad if the head of RJR's research and development team believed that smoking causes cancer. Thus, while these documents were prepared by RJR's lawyers (and reflect conversations held with Mr. DiMarco), the documents nonetheless do not contain communications protected by the attorney-client privilege. *See id.* at 488 ("A party may not cloak a document with a privilege by simply having business … or public relations matters handled by attorneys.").

■ Document 102 is a memorandum written by RJR's general counsel to RJR's CEO summarizing discussions between and among RJR lawyers and research and development persons concerning product research efforts and proposals. The document does not relate to the provision of legal advice

---

**1.** Specifically, RJR seeks review of Judge O'Hara's rulings with respect to the documents found at Tabs 13, 38, 41, 43–45, 50–52, 55–59, 61–63, 65–68, 70–76, 77A–81, 83–85, 86, 88–91, 93–94, 95, 97–107 (including 99A), 109 and 111.

**2.** These documents include 50–52, 57, 58, 62, 66, 68, 70, 72, 74–76, 78, 79, 85, 86, 88, 91, 93, 94, 98, 99, 100, 102–104 and 106.

and, as such, is not privileged. *See id.* at 487–88 (activities and advice concerning research proposals are of a business nature rather than a legal nature).

█ Finally, document 78 is a memorandum written by an RJR scientist who apparently assisted RJR patent attorneys as a scientific paralegal (thus, while the document is not written by an RJR lawyer, the court nonetheless includes the document in this particular category for convenience) to Robert DiMarco. The memorandum concerns "certain RJR invention disclosures which may warrant consideration for possible further work in the R & D department" and, according to RJR, the author comments on the "patentability" of three particular invention disclosures. The thrust of the document, however, does not relate to the provision of legal advice. The document primarily concerns scientific research with no connection to the rendering of legal advice. The document is not privileged.

● Drafts of Documents Written by RJR Personnel and Submitted to RJR Lawyers for Review and Comment

█ Two documents on plaintiff's trial exhibit list and objected to by RJR reflect drafts prepared by nonlawyers but submitted to RJR lawyers for review and comment prior to submission to the intended recipient. Document 52, for example, is a draft of a letter written by an RJR scientist to a German researcher regarding a nicotine research concept. RJR claims that the document is protected by the attorney-client privilege because it was forwarded to outside counsel for review. The court disagrees. The letter on its face does not reveal that outside counsel reviewed the letter or provided any legal advice concerning the content of the letter. RJR provides no authority for its argument that the mere fact that counsel was asked to review a document cloaks the document with a privilege. RJR also claims that the document is protected because the third paragraph of the letter references an agreement reached as a result of legal advice (*i.e.,* "it was agreed that the research would be limited to 'disease' related problems"). As has already been recognized

in this litigation, agreements reached as a result of legal advice are not protected communications. *See id.* at 487. Document 79 is a draft response to anticipated questions stemming from a series of paid editorial statements issued by RJR in the mid–1980s concerning smoking and health. The response was written by RJR's Director of Public Issues and sent to outside counsel for "an opinion about the approach and the content." There is no suggestion, however, that the author of the response was seeking legal advice as opposed to public relations advice or general business advice. *See id.* at 484 ("A distinction is made between a lawyer providing business or technical advice rather than legal advice. Legal advice must predominate for the communication to be protected.") (citation omitted). In any event, the mere fact of submission of a document to counsel for legal input is not a protected communication. *See id.* at 486. For these reasons, the two documents submitted to RJR lawyers for review and comment are not protected by the attorney-client privilege.

● Documents Written by RJR Personnel that Refer to Alleged Requests by RJR Lawyers

█ RJR requests that the court review two documents that reference requests made by RJR lawyers. The first document, document 50, is a memorandum from two RJR scientists to RJR's chief legal officer and two RJR executives concerning tobacco glycoprotein. RJR claims that the document is protected by the attorney-client privilege because it contains the substance of a request from Edwin Jacob, RJR's outside smoking and health litigation counsel. Specifically, the memorandum reflects that Mr. Jacob requested that RJR scientists isolate a quantity of tobacco glycoprotein and provide the quantity to the Council for Tobacco Research grantees for studies on its biological properties to substantiate or refute the claims of one researcher that tobacco glycoprotein was responsible for a number of diseases in both smokers and nonsmokers. The court rejects RJR's argument that the document is privileged. RJR has not shown that Mr. Jacob's

request was made in the course of rendering legal advice. Rather, it appears only that Mr. Jacob's request was made in the course of rendering general business advice or for public relations purposes.

■ Document 72· is a "weekly highlights" memorandum from an RJR scientist to a person in RJR's research and development group. While RJR does not object to the use of the document in its entirety, RJR claims that the fourth bullet point in the memorandum is protected by the privilege and, thus, should be redacted. The fourth bullet point states:

> At the request of the Legal Department, a research proposal from Bowman Gray by Dr. Vardaman M. Buckalew, Jr. and associates was critically examined and an affirmative recommendation was made.

The primary thrust of this bullet point has nothing to do with an attorney-client communication. It reports an action by the scientist authoring the document. Actions are not communications and, thus, are not privileged. *See id.* at 484 (citation omitted). In any event, there is no suggestion that the request was made to aid in the provision of legal advice to RJR (as opposed to general business advice or for public relations purposes). *See id.* at 487–88 (activities and advice concerning research proposals are of a business nature rather than a legal nature).

● Documents Written by RJR Personnel to RJR Lawyers

■ A number of documents (*i.e.,* documents 51, 62, 68, 70, 75, 85, 106) on plaintiff's trial exhibit list and to which RJR object concern various scientific developments or research studies. Document 62, for example, is an interoffice memorandum regarding the significance of trace levels of DDT, TDE and DDE in overseas tobacco. Document 70 is a memorandum concerning a study on cigarettes containing Freon 11–processed tobacco. Document 85 is a supplemental report on "Solids and Nicotine in Cigarette Smoke." These documents are generally written or prepared by scientists and directed to RJR lawyers. According to RJR, these documents were directed to RJR lawyers because the lawyers needed to be kept

advised and updated on various scientific developments for purposes of monitoring legislative, regulatory and litigation threats concerning RJR's products. While this may be true, the documents themselves contain no accompanying request for any legal advice whatsoever. Document 51, for example, is simply a letter to outside counsel requesting that counsel forward to other tobacco companies two papers on nitrosamines in mainstream and sidestream smoke. The letter further requests that scientists from those tobacco companies determine whether they can critique the methodology used in the papers. Clearly, no request is made for legal advice of any kind. Other documents were prepared simply to enable RJR lawyers to rebut public criticisms of RJR products. Document 106, for example, is a report on preliminary experiments on cigarettes prepared with potassium carbonate/glycerine treated tobacco. This document was created to rebut certain allegations raised by the FDA in congressional hearings. While the document was transmitted to RJR lawyers, no request is made for legal advice and the information contained in the document (the results of the experiments) could have been disseminated by any number of RJR personnel. Similarly, document 68, containing puff-per-cigarette information for various cigarette brands, was created in response to questions from the Better Business Bureau about RJR's claim in its advertising that the More cigarette brand had 50% more puffs than 100 mm cigarettes. Again, this information, while transmitted to an RJR lawyer, could have been disseminated to the Better Business Bureau by an RJR scientist or an RJR public relations person. It is not privileged simply because it is transmitted to a lawyer. *See id.* at 489. Finally, some of these documents simply report the judgment and activities of the RJR scientist authoring the document. Document 75, for example, is a memorandum detailing the author's (an RJR scientist) trip to Europe to visit with British tobacco industry scientists regarding smoking and health issues. No request for legal advice is made.

Unlike the documents discussed above, document 91 does contain an express request for a "clear statement of current legal opin-

ion" regarding a particular research project. Similarly, document 74 is a letter written to RJR's in-house counsel from an individual in RJR's marketing research department. The letter pertains to an upcoming meeting with RJR's marketing research people and RJR lawyers for the purpose of having RJR lawyers "talk with [the marketing research people] on some of the issues [they] need to be aware of in the course of conducting research." The letter identifies several specific areas on which "it would be helpful to hear [the lawyers'] thoughts on," including sensitivity to the "legal aspects" of their work. Thus, these documents, at first blush at least, appear to relate to the provision of legal advice. It may be, however, that the documents do not relate to legal advice in the traditional sense, but rather "legal opinions" in the context of RJR's business practice of having lawyers review virtually all documents and participate in all facets of the business. In any event, documents 74 and 91 are remanded to Judge O'Hara for further consideration of RJR's claim of attorney-client privilege and explication of his reasoned analysis in order for the court to perform a fully informed review.

▉▉▉▉ Document 66, on the other hand, contains no request for legal advice. It is simply a letter written by an RJR scientist to the general counsel of RJR's German affiliate in which the author comments on the minutes of a meeting of the German Research Council on Smoking and Health. The author clearly is not seeking legal advice. Rather, he quite vigorously complains about various non-legal subjects discussed at the meeting (as evidenced in the minutes) and various attendees of the meetings. The author also offers his own thoughts and judgment concerning certain non-legal topics that were discussed at the meeting. There is no evidence that these comments were made for the purpose of aiding the recipient in rendering legal advice to RJR. Similarly, document 57 is a letter from an RJR scientist to the general counsel of RJR's German affiliate. The letter is apparently a response to a request from the general counsel that the scientist review and comment on a draft pamphlet regarding smoking and health issues. The purpose of the pamphlet discussed is clearly to respond to public criticisms, allegations and questions about smoking and health. The author of the letter does not request legal advice or discuss legal issues. The document is not privileged.

▉▉▉▉ Document 100 is an interoffice memorandum from RJR's CEO to RJR's general counsel. The memorandum concerns outside counsel's recommendation that RJR "should fund additional medical research in order to gain additional facts that [it] can use to defend [itself] against [its] critics" and outside counsel's belief that "an increase in medical research grants to various institutions could help improve the tobacco industry's credibility." Ultimately, the memorandum is a request by RJR's CEO for in-house counsel to evaluate what RJR's "next steps" should be in terms of the recommendations made by outside counsel. RJR contends that this document clearly relates to the provision of legal advice and contains the substance of other confidential attorney-client communications. The court disagrees. Document 100 is simply another example of RJR's continued efforts to improve its public image by rebutting public criticisms of its products. While RJR's lawyers were active participants in the ongoing public relations battle, such participation does not render all public relations issues "legal" ones. Because document 100 does not relate to the provision of legal advice, it is not protected by the privilege.

Finally, document 76 is a memorandum written by an RJR scientist to an RJR scientist who apparently assisted RJR patent attorneys as a scientific paralegal (thus, while the document is not written to an RJR lawyer, the court nonetheless includes the document in this particular category for convenience). The memorandum advises of an effort to "aid" RJR's German affiliate in "producing a very low nicotine cigarette for a test market" in West Germany. The author of the memorandum ultimately requests that the recipient "investigate the patent implications of the proposed work" including the project's "patentability" and whether RJR "might be infringing present patents." On its face, then, the document appears to re-

flect a request for an opinion of a legal nature-patent infringement. Indeed, the response to the memorandum (included with RJR's materials submitted ex parte) seems to render, to some extent, legal advice on infringement issues. A significant portion of both the memorandum and response, however, deal with scientific and technical issues rather than legal issues. It may be that Judge O'Hara determined that the primary purpose of this document was not related to legal advice, but business or technical advice. In any event, the court remands this matter to Judge O'Hara for further consideration of document 76.

- *Attorney–Client Privilege and Work Product Immunity*

■ Of the documents that RJR requests this court to review, RJR objected to 17 documents on the basis of both the attorney-client privilege and work product immunity.[3] As set forth above, the attorney-client privilege protects confidential communications between an attorney and client which occur in the course of giving or requesting legal advice. *See Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D.Kan.1997). The work product doctrine protects documents and tangible things revealing the attorney's mental process which would otherwise be discoverable, prepared in anticipation of litigation. *See id.* at 485 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). As set forth below, the court remands documents 61, 90 and 97 to Judge O'Hara for further consideration; the remaining documents are not privileged or protected.

- Documents Written by RJR Lawyers

■ Documents 84 and 90 were written by Edward Jacob, outside counsel for RJR. Document 84 is essentially a transcript of a presentation made by Mr. Jacob to a group of RJR executives on smoking and health issues. The document reflects Mr. Jacob's discussions with these executives about his views of recent developments in the smoking and health controversy and his belief that RJR's judgment regarding cigarettes and disease causation was a truthful

one. These statements have nothing to do with particular pending or anticipated litigation and are clearly not made in the course of rendering legal advice. At most, Mr. Jacob was rendering general business advice or public relations advice to RJR executives. While Mr. Jacob also mentioned that "one wants to be very careful so that the public statements that are made don't lose lawsuits" in the context of cautioning the audience against assuring the public of the safety of cigarettes, RJR has not shown that this statement constitutes legal advice. The statement is simply too general and conclusory to be considered as such. In document 90, Mr. Jacob outlines a proposal for a new "more aggressive" tobacco industry posture on smoking and health. In particular, Mr. Jacob advises RJR's general counsel that "a necessary foundation for full industry credibility is public perception that the industry sincerely believes the primary issues [that cigarettes cause disease] is an open question." This is clearly a public relations issue, not a legal one. However, Mr. Jacob also briefly mentions traditional defenses in smoking and health lawsuits (i.e., "[n]one of the above is intended to dismiss the traditional point that a critical defense in smoking and health litigation is based upon the argument that no one forced the plaintiff to smoke, and that an assurance of safety or other derogation of that argument is dangerous") and "new litigation threats." Because portions of document 90 require a closer analysis of the attorney-client privilege issue, the court remands this document to Judge O'Hara for further consideration. RJR's claim of work product immunity, however, is rejected. There is no mention in document 90 of any particular pending or anticipated litigation (or any argument from RJR that the document was written with an eye toward particular pending or anticipated litigation).

■ Documents 101 and 105 are written by RJR's general counsel and concern G. Robert DiMarco and RJR's concern about whether Mr. DiMarco's views on causation were consistent with RJR's views on that

3. These documents include 38, 41, 61, 63, 65, 67, 71, 80, 83, 84, 90, 95, 97, 101, 105, 107 and 109.

subject. For the same reasons as discussed above in connection with documents 99, 103 and 104, RJR's claim that documents 101 and 105 are privileged is rejected. The court also rejects RJR's argument that the documents are protected by work product immunity. According to RJR, document 101 "reflects ... general counsel's views regarding litigation." This argument lacks merit. Document 101 simply contains one statement that "[a]fter review, the litigating risks of GRD's 'Beliefs' we therefore view as manageable." This statement does not address any particular pending or anticipated litigation or the specific legal implications of Mr. DiMarco's beliefs. With respect to document 105, RJR maintains that it reflects "the implications of certain matters on pending and anticipated litigation." The court disagrees. While the document references in a very general way unidentified "litigation risks" associated with Mr. DiMarco's "beliefs," there is no reference to particular pending or anticipated litigation. The work product immunity claim is rejected. *See Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 498 (D.Kan.1997) (as RJR is in the business of litigation, documents prepared in the ordinary course of that business of litigation without a tie to specific litigation are not protected by work product immunity).

 Two documents in this category (*i.e.*, documents to which RJR objected based on attorney-client privilege and work product immunity), documents 38 and 107, relate to the Council for Tobacco Research (CTR)—the cigarette manufacturers' research funding organization. Document 38, for example, is a memorandum authored by RJR's outside counsel summarizing a meeting of tobacco companies' outside counsel to discuss CTR document production issues and the development of an industry research and development timeline. Document 107 is a memorandum authored by an RJR in-house lawyer briefly summarizing the history of "Special Projects" that were funded by CTR, including the history of lawyer participation in those projects. These documents do not appear to relate to the provision of legal advice and RJR has not met its burden of showing that the documents were created in the course of rendering legal advice or to facilitate the provision of legal advice. The documents seem to be merely educational in nature. Accordingly, they are not protected by the attorney-client privilege. The documents also are not protected by work product immunity in that they are not tied to any specific pending or anticipated litigation.

 Document 41 is a memorandum drafted by RJR's outside counsel to RJR's general counsel summarizing outside counsel's discussions with Robert DiMarco on a variety of topics. The court has reviewed the 16–page memorandum in its entirety and concludes that any legal advice contained therein is merely incidental to the primary subject of the memorandum-advice on a wide range of business and public relations issues. Thus, RJR's claim of attorney-client privilege is rejected. *See Burton,* 170 F.R.D. at 484 (no privilege where legal advice is merely incidental to business advice). The court also rejects RJR's claim that the document is protected by work product immunity. Nothing in the document relates to any particular pending or anticipated litigation. *See Burton,* 177 F.R.D. at 498 (as RJR is in the business of litigation, documents prepared in the ordinary course of that business of litigation without a tie to specific litigation are not protected by work product immunity).

 Document 61 is a written checklist of "Areas of Legal/Litigation Sensitivity Relating to RJRTC [Research and Development] Efforts." This document was prepared by members of RJR's legal department for use by persons in RJR's research and development department. Because the document is not tied to any particular pending or anticipated litigation, the court rejects RJR's claim of work product immunity. RJR's claim of attorney-client privilege, however, is a closer question. The checklist focuses on "risk management" advice—advice that may properly be construed as legal advice in this context. Thus, the court remands consideration of this document to Judge O'Hara for an analysis of RJR's claim of attorney-client privilege.

 Document 95 is a collection of handwritten notes from an RJR in-house

lawyer. Some of the notes were apparently taken during meetings with other counsel and RJR scientists; the remainder of the notes reflect the author's thoughts and impressions regarding those meetings. The court has carefully reviewed these notes and RJR's in camera submission relating to these notes. RJR has wholly failed to meet its burden of showing that these notes relate to the provision of legal advice. Thus, RJR's claim that the attorney-client privilege prevents plaintiff from using the document at trial is rejected. The court also rejects RJR's claim that the document is protected by work product immunity as there is no indication in the document (and no suggestion from RJR) that the notes concern any specific pending or anticipated litigation.

▬ Finally, document 97 is a memorandum from an RJR in-house lawyer to two RJR executives summarizing "two days of industry meetings" regarding a variety of issues. As the document is not tied to any particular pending lawsuit or anticipated litigation, the court rejects RJR's claim of work product immunity. RJR maintains that the document is protected by the attorney-client privilege because the document references another tobacco company's (Liggett) decision to withhold payment from future joint litigation support expenses and because the document addresses the issue of "newspaper shrinkage" of health warnings (*i.e.*, warnings that cigarette manufacturers were required to display as a result of certain consent decrees with the FTC and that were supposed to be a certain size but shrank in the printing process). The author of the document, however, does not purport to render legal advice to RJR on the issue of Liggett's participation in joint litigation support expenses. Rather, the author, to the extent he is advising RJR, is clearly rendering advice of a business nature. RJR's claim of attorney-client privilege with respect to the shrinkage issue and compliance with the consent order, however, requires a closer analysis. This portion of document 97 (paragraph 6) is remanded to Judge O'Hara for further consideration of the attorney-client privilege issue.

● Documents Written by RJR Personnel

Documents 63, 71, 83 and 109 are all written by RJR scientists and deal with what RJR calls "the Barclay litigation." By way of background, Brown & Williamson introduced the Barclay brand cigarette in January 1981. As measured by the FTC's testing method, Barclay had an extremely low delivery of tar and nicotine. Brown & Williamson apparently promoted the Barclay cigarette as having low delivery of tar and nicotine. RJR analyzed Barclay cigarettes and determined that their low tar and nicotine measurements could be misleading for various reasons. Based upon this analysis, RJR filed a complaint with the FTC alleging that the use of FTC's testing method for Barclay cigarettes was improper. RJR submitted studies to support that claim and Brown & Williamson submitted its own studies ·in rebuttal. In June 1982, the FTC determined that its testing method did not accurately measure Barclay's tar and nicotine deliveries. In July 1983, the FTC sued Brown & Williamson seeking injunctive relief and, in October 1983, a federal court enjoined Brown & Williamson from advertising the tar and nicotine levels for Barclay as measured by the FTC's testing method.

▬ The court turns, then, to the documents pertaining to the Barclay issue. Document 63 is an interoffice memorandum from an RJR scientist to his superior in RJR's research and development department. The memo is essentially a status report on various developments in the bio-· behavioral division of the research and development department for the third quarter · of 1983. RJR objects to only two paragraphs of the report—the two paragraphs discussing the "Barclay issue." Document 71 is a scientific analysis prepared as a rebuttal ·to some of Brown & Williamson's claims in defense of the suit filed by the FTC. Document 83 is a memorandum from an RJR scientist to RJR's general counsel advising the general counsel of a then-unpublished study conducted by scientists at the American Health Foundation in which the scientists "came essentially to the same conclusions as [RJR has]" regarding Barclay (*i.e.*, that Barclay's tar and nic-

otine deliveries as measured by the FTC were inaccurate). Finally, document 109 is a March 1982 memorandum from three RJR scientists to their superior in RJR's research and development department in which the scientists outline their concerns about the consequences that might result in the event that the FTC failed to take action relating to Barclay. These documents are not protected by the work product doctrine for at least two reasons. First, as it does not appear that RJR was a party to the FTC/Barclay litigation, it is doubtful whether RJR can avail itself of the work product doctrine. *See In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 924 (8th Cir.1997); *In re California Public Utilities Comm'n,* 892 F.2d 778, 781 (9th Cir.1989) (concluding that non-party to litigation may not assert work product doctrine).[4] Second, RJR has not shown that the primary purpose of these documents was to assist in the Barclay litigation. In other words, while the documents undoubtedly assisted the FTC in its litigation against Brown & Williamson, RJR has not shown that the documents were not prepared in the ordinary course of RJR's business. *See Burton,* 170 F.R.D. at 485. Moreover, the documents are not protected by the attorney-client privilege. Even a cursory review of the documents reveals that the documents do not contain requests for legal advice or the provision of legal advice. Three other documents in this category were drafted by RJR scientists. Document 65 is a memorandum from an RJR scientist to an in-house lawyer responding to an inquiry from counsel regarding whether any of the ingredients RJR added to its cigarettes "flashed off" during the smoking process. RJR maintains that the document is protected by work product immunity because "issues relating to ingredients were reasonably anticipated to be—and soon thereafter were-raised by plaintiffs in smoking and health litigation." The court rejects this argument. As this court has already held in the context of this case, RJR is in the business of litigation. *See Burton v. R.J. Reynolds Tobacco Co.,* 177 F.R.D. 491, 498 (D.Kan.1997). As such, documents prepared in the ordinary course of that business of litigation without a tie to specific litigation are not protected by work product immunity. *Id.* Because document 65 is not tied to any particular litigation, work product immunity does not protect the document from use at trial. RJR next claims that the document is privileged because the information contained in the memorandum assisted RJR lawyers in advising their client in negotiations with the Department of Health and Human Services (DHHS). The court also rejects this argument. By way of background, in the early 1980s, after reviewing certain ingredients information provided to it by cigarette manufacturers, DHHS asked those manufacturers for any information they might have about the toxicity of the products produced when the materials on the list were burned. Due to the substantial number of ingredients on the list, manufacturers eliminated from the list any ingredients that "flashed off," or were destroyed prior to reaching the smoker. In short, RJR has simply not shown that these "negotiations" with DHHS were legal in nature or that RJR's lawyer were providing legal advice (as opposed to general business or scientific advice) in connection with the DHHS inquiries.

Document 67 is a memorandum from an RJR scientist to an in-house lawyer in which the scientist suggests that RJR representatives discuss with representatives from competitor tobacco companies the possibility of developing a "consensus" on the "Smoking and Health Controversy." Contrary to RJR's argument, the memorandum does not contemplate the discussion of "litigation issues" and certainly does not contemplate the discussion of any specific litigation. In any event, as previously noted, RJR is in the business of litigation. *See Burton,* 177 F.R.D. at 498. As such, documents prepared in the ordinary course of that business of

---

4. Even assuming that the "common interest" doctrine applies in the work product context, the doctrine would not apply to this case. *See Fron-* *tier Refining Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 705 (10th Cir.1998).

litigation without a tie to specific litigation are not protected by work product immunity. *Id.* Document 67 was clearly not prepared in anticipation of any particular litigation and RJR's work product immunity claim is rejected. Moreover, document 67 contains no request for legal advice and is not related to the provision of legal advice. Thus, RJR's privilege claim is also rejected.

■■■■ Finally, document 80, drafted by RJR scientists, is a proposed question and response for use in upcoming congressional hearings at which RJR's CEO was expected to (and did) testify. As the court stated above in connection with document 93, this document was not prepared for the purpose of requesting or in the course of rendering legal advice and the paper on its face reveals that it was intended for public relations purposes rather than legal purposes. Thus, the document is not privileged. Moreover, while RJR purports to object based on work product immunity, RJR fails to make any specific argument concerning why this document would be protected under that doctrine. In the absence of any argument from RJR, and seeing no connection to any particular litigation or anticipated litigation, the court concludes that the document is not protected by work product immunity.

● *Other CTR-related Documents*

■■■■ Document 13 is a memorandum written by American's chief in-house lawyer memorializing discussions held during a meeting of the Tobacco Institute's Committee of Counsel. The notes reflect discussions on a variety of subjects, including the selection and preparation of witnesses for congressional hearings; the direction of research at CTR; and the settlement of litigation over warning notices. RJR claims that the document is subject to the attorney-client privilege. The court disagrees. The contents of the document does not relate to the provision of legal advice. At most, the document reflects reporting on the activities of the committee. Thus, the court need not address RJR's claim concerning the joint defense exception. *See id.* at 500 (under the joint defense exception, disclosure of privileged information to a third party does not

constitute a waiver of the attorney-client privilege if the third party is counsel for an actual or potential co-defendant). Moreover, to the extent RJR contends that these documents are protected by work product immunity, that contention is rejected as the notes do not reflect any particular pending or anticipated litigation.

■■■■ Documents 43, 44 and 45 are sets of typewritten and handwritten notes memorializing discussions during various meetings of the Industry Health Research Committee—a committee formed, according to RJR, to establish broad policy recommendations for tobacco industry management and to advise the executive committee of the Tobacco Institute. The notes generally reflect discussions concerning the industry's initiation and completion of various scientific research projects; the history of the CTR; the role and benefits of the CTR; trends in ongoing litigation; and the development of expert witnesses. RJR claims that the notes are subject to the attorney-client privilege. The court has carefully reviewed the notes and concludes that the contents of the these documents simply do not relate to the provision of legal advice (as opposed to public relations advice; technical advice; or general business advice). The objection is overruled and, thus, the court need not address RJR's claim concerning the joint defense exception. *See id.* at 500 (under the joint defense exception, disclosure of privileged information to a third party does not constitute a waiver of the attorney-client privilege if the third party is counsel for an actual or potential co-defendant). Moreover, to the extent RJR contends that these documents are protected by work product immunity, that contention is rejected as the notes do not reflect any particular pending or anticipated litigation.

■■■ Document 56 is a set of typewritten notes prepared by Timothy Finnegan, outside counsel for RJR. The notes were apparently taken during a meeting among Mr. Finnegan and various outside counsel for other cigarette manufacturers during which counsel discussed a number of CTR-related issues. RJR, in conclusory fashion, states that "attorneys' notes of confidential communications prepared in the course of an attor-

ney-client relationship fall within the attorney-client privilege." What RJR overlooks, of course, is that those confidential communications must relate to the provision of legal advice. A review of document 56 reflects no request for or rendering of legal advice. The objection is overruled and the court need not address RJR's claim of the joint defense privilege. *See id.*

■ Documents 73 and 77A deal with the Literature Retrieval Division of the CTR. The Literature Retrieval Division (LRD) was a computerized database of published scientific literature regarding smoking and health maintained for use by counsel in connection with pending and anticipated litigation. RJR contends that both documents are protected by work product immunity. The court disagrees. Document 73 is a memorandum from an RJR scientist to his superior in the research and development department. RJR does not object to the use of the document in its entirety; rather, RJR contends only that the final two paragraphs on the third page of the document are protected. In those paragraphs, the author simply describes his work in connection with the LRD. RJR has not shown (or even alleged), however, that the work described by the author was performed in connection with any particular pending or anticipated litigation. For this reason, the work product immunity claim is rejected. Document 77A is a one-page handwritten note from Gloria DeGregori on the LRD to an RJR scientist. In the note, Ms. DeGregori reports on the results of a search of the LRD database performed at the scientist's request. In conclusory fashion, RJR contends that the note is protected by work product immunity. RJR has not identified the particular case to which the search related or any anticipated litigation to which the search related. Because RJR has not met its burden of showing that work product immunity protects document 77A from use at trial, this objection is overruled.

● *Remaining Miscellaneous Documents*

■ Document 55 is a memorandum from an RJR scientist to an RJR in-house lawyer essentially forwarding two published articles discussing the government's views regarding risk-benefit analyses in connection with consumer products. In his memorandum, the scientist notes that the articles "deal specifically with consumer products that contain a 'hidden' hazard" and further states that "[t]his reasoning might apply to our tobacco, as well as non-tobacco, products." RJR maintains that the document is protected by the attorney-client privilege. The court disagrees. The document does not contain a request for legal advice and does not purport to render legal advice. Because the court concludes that the subject matter of this communication does not relate to legal advice, the court need not address RJR's claim of the joint defense privilege.

■ Document 59 is a draft planning memorandum written by an RJR scientist identifying European scientists who might be worth contacting (for purposes of ascertaining whether those scientists might be willing to work with RJR and serve as witnesses for RJR in regulatory or legislative proceedings or in litigation) during the author's then-forthcoming trip to Europe. RJR objects to this document only on the basis of work product immunity. The objection is overruled. As stated in other parts of this opinion, as RJR is in the business of litigation, documents prepared in the ordinary course of that business of litigation (such as document 59) without a tie to specific litigation are not protected by work product immunity. Document 59 reflects no particular pending or anticipated litigation.

■ Document 81 is a memorandum from an RJR scientist to outside counsel for RJR and other cigarette manufacturers asking to be kept advised on the status of efforts to review and critique a scientific study called "Mr. Fit"—a study funded by the American Heart Association. RJR maintains that the document is protected by the attorney-client privilege because "the letter related to Reynolds' and the other cigarette manufacturers' common interests in defending pending and anticipated smoking and health litigation." This argument lacks merit. The subject matter of the document simply does not relate to the provision of legal advice. For this reason, too, the court need not consider RJR's claim of the joint defense privilege.

■ Document 89 is a memorandum from an RJR scientist to an RJR in-house lawyer, with copies to other RJR in-house lawyers, RJR's outside counsel, and outside counsel for other cigarette manufacturers. The memorandum advises that the Swiss affiliate of Philip Morris noted in a patent application that "[m]any tobaccos ... contain nitrates and/or nitrites, which, on smoking, can form toxic nitrogen oxides." The author of the memorandum also advises that he had brought that fact "to the attention of Philip Morris." RJR contends that the document is protected by the attorney-client privilege. The court disagrees. Nothing in the document suggests that the author was seeking legal advice or that the subject matter of the document facilitated the rendering of legal advice as opposed to general business advice or public relations advice. Thus, the court need not consider RJR's claim of the joint defense privilege.

■ Finally, document 111 is a binder of materials entitled "Cigarette Liability Litigation Background and Question and Answer Book." The binder contains roughly 230 pages of material and was apparently intended (as noted on the first page of the binder) "as background information for tobacco litigating counsel who are authorized to respond to media inquiries." The material in the binder was compiled by an RJR employee with input from several RJR lawyers. The materials submitted by RJR ex parte reflect that RJR contends only that the document is protected on the basis of work product immunity—not the attorney-client privilege. As set forth numerous times in this opinion, as RJR is in the business of litigation, work product immunity requires a nexus to specific pending or anticipated litigation. Document 111 reflects no such nexus. Rather, it is simply a tool to assist litigation attorneys in responding to media inquiries. While this binder may have assisted with particular pending cases or anticipated cases, there is no suggestion that it was created for the purpose of any particular case. In short, RJR's claim of work product immunity is

rejected and the court need not address the joint defense privilege.

● Plaintiff's Motion for Sanctions

■ In his motion for sanctions, plaintiff contends that defendants' outside counsel have "unreasonably and vexatiously multipl[ied] these proceedings by intentionally or recklessly disregarding their duties to this Court." In support of his motion, plaintiff argues that opposing counsel have ignored this court's prior rulings regarding (and the court's prior rejection of their arguments concerning) the scope of the attorney-client privilege and the work product immunity doctrine. Plaintiff charges opposing counsel with repeated and improper attempts to resurrect and relitigate these issues before the court. Plaintiff also maintains that opposing counsel intentionally or recklessly disregarded this court's ruling that the in camera review conducted by Judge O'Hara be confined to issues of attorney-client privilege and work product immunity. As set forth below, plaintiff's motion for sanctions is denied.

According to plaintiff, defendants' counsel's argument that the "Bliley" production [5] did not act as a blanket waiver of the attorney-client privilege was "frivolous, specious and moot" because defendants allegedly knew that none of their privilege claims as to any of the specific documents contained within the set produced to Congress was valid. Plaintiff's argument lacks merit. At the time defendants made their arguments concerning the Bliley production (the blanket waiver issue, of course, was initially raised by plaintiff), plaintiff had identified nearly 3,000 documents on his trial exhibit list. Plaintiff has not shown that defendants' privilege claims were invalid with respect to all or a substantial portion of these 3,000 documents. In fact, the court never even analyzed any specific claims of privilege for the vast majority of these documents in light of the fact that plaintiff's "pared down" exhibit list (requested by the court) contained less than 125 exhibits. Thus, plaintiff simply speculates when he suggests that the remaining 2900 or

---

5. On April 6, 1998, defendants produced thousands of documents to a congressional committee in response to a subpoena issued by Congressman Bliley.

so documents were not privileged. Stated another way, plaintiff simply has not established the factual predicate for his motion. Moreover, in his review of the exhibits on plaintiff's pared down trial exhibit list, Judge O'Hara sustained some (though not many) of defendant's privilege claims.

Plaintiff next argues that opposing counsel have disregarded this court's prior rulings regarding the scope of the attorney-client privilege and work product immunity doctrine (rulings made several years ago in the discovery context) by continuing to argue that "a document which was generated by an attorney or somehow references an attorney is privileged" and by continuing to argue that the work product immunity doctrine applies to the tobacco industry's scientific and technical documents even in the absence of any tie to specific litigation. Specifically, plaintiff asserts that opposing counsel continued to press these arguments before Judge O'Hara in connection with their recent motion to strike and again before this court in connection with their motion to review Judge O'Hara's order. In response, defendants primarily assert that the documents at issue in connection with their recent motion to strike and motion to review are different from those documents at issue when the court made its rulings concerning the scope of the attorney-client privilege and work product immunity doctrine. Defendants also assert that they continued to press these arguments for fear of having been deemed (at some subsequent time) to have waived such arguments.

The court agrees with plaintiff that defendants in many respects seem to have ignored this court's prior rulings with respect to the scope of the attorney-client privilege and the work product immunity doctrine. Indeed, Judge O'Hara, in his order granting in part and denying in part defendants' motion to strike, expressed considerable frustration with defendants for this very reason. On the other hand, the court recognizes that the documents at issue now are different from those that were at issue during the discovery phase of this litigation. Moreover, as defendants highlight, the court has also acknowledged that the legal principles governing the privilege disputes in this case are somewhat unsettled in this particular context. For these reasons, the court, although it believes that both it and plaintiff were put to some effort that may have been avoidable, does not believe that sanctions are appropriate. That having been said, however, the court also strongly believes that it would have been a better exercise in professionalism for defendants' counsel to have acknowledged the court's prior rulings concerning the scope of the attorney-client privilege and the work product immunity doctrine, asserted their position that the court's prior rulings were wrong and that they did not waive their position, and then attempted to explain why the court's prior rulings would not apply to the documents at issue in their most recent motion to strike. Defendants made no such effort in their recent papers. Thus, in the absence of any argument from defendants as to why those rules should not apply to the most recent set of documents (and because the court is not inclined to make arguments for a party), this court (and perhaps Judge O'Hara) simply applied the rules that have been applied throughout this litigation—usually to the detriment of defendants. Defendants are, moreover, cautioned that the court's patience with reasserting failed arguments without defendants' acknowledging the same has reached its limits.

Finally, plaintiff contends that opposing counsel ignored this court's directive that the in camera review undertaken by Judge O'Hara be limited to issues of attorney-client privilege and work product immunity by raising "a plethora of frivolous relevancy arguments." As noted by Judge O'Hara in his order, however, this court also expressly contemplated that Judge O'Hara would consider whether the documents on plaintiff's revised trial exhibit list were "starkly irrelevant." While Judge O'Hara ultimately determined that none of the documents on plaintiff's exhibit list fit that description, it was appropriate for defendants, in an abundance of caution, to raise such objections in connection with the in camera review.

For the foregoing reasons, plaintiff's motion for sanctions is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant RJR's motion for review (doc. # 377) is granted in part and denied in part. Specifically, the court remands documents 61, 74, 76, 90, 91 and 97 to Judge O'Hara for further consideration of RJR's claim of attorney-client privilege, including an explication of his reasoned analysis in order for the court to perform a meaningful review if necessary. In considering RJR's privilege claim with respect to these documents, Judge O'Hara should also consider whether portions of those documents should be redacted where exclusion of the entire exhibit would be inappropriate. Judge O'Hara shall complete this review within ten (10) days of the date of this order. The remainder of Judge O'Hara's order is affirmed for the reasons set forth in this opinion.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for sanctions (doc. # 380) is denied.