David BURTON, Plaintiff,

v.

**R.J. REYNOLDS TOBACCO CO., et al., Defendants.**

No. 94–2202–JWL.

United States District Court, D. Kansas.

Oct. 4, 2001.

Kenneth B. McClain, Nicholas E. Mebruer, Nimrod T. Chapel, Jr., Donald H. Loudon, Jr., Scott B. Hall, Humphrey, Farrington & McClain, Independence, MO, Gregory Leyh, Kansas City, MO, for plaintiff.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, P.C., Stanley D. Davis, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Junius C. McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Stephen B. Yeager, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, Prairie Village, KS, Catherine L. Bjorck, Jones, Day, Reavis & Pogue, Dallas, TX, for R.J. Reynolds Tobacco Company, Inc.

James D. Griffin, Blackwell Sanders Peper Martin LLP, Kansas City, MO, James M. Warden, Blackwell Sanders Peper Martin LLP, Overland Park, KS, Frank C. Woodside, III, Mary–Jo Middelhoff, Dinsmore & Shohl LLP, Cincinnati, OH, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke LLP, New York City, Roger W. Warren, Sanders Conkright & Warren LLP, Kansas City, MO, for The American Tobacco Co.

### *MEMORANDUM AND ORDER*

O'HARA, United States Magistrate Judge.
#### I. INTRODUCTION.

From approximately 1950 until 1993, the plaintiff, David Burton, claims that he smoked Camel-brand cigarettes made by defendant R.J. Reynolds Tobacco Co. (Reynolds) and, to a lesser extent, Lucky Strike-brand cigarettes made by The American Tobacco Co. (American).[1] Plaintiff claims in this products liability suit that as a result of his smoking defendants' cigarettes, he developed peripheral vascular disease, which ultimately led to the amputation of both of his legs.

There are four pending motions. First, pursuant to Fed.R.Civ.P. 37, plaintiff has moved to sanction defendants for failing to provide sufficient initial disclosures pursuant to Fed.R.Civ.P. 26(a), and for not supplementing those disclosures appropriately pursuant to Fed.R.Civ.P. 26(e) (**doc. 423**). Second, plaintiff seeks leave to add one witness to his purportedly final witness list, and to take the deposition of that witness, namely, David Goerlitz, who is a former Reynolds advertising model (**doc. 432**). Third, plaintiff wishes to re-depose Reynolds' former senior vice-president of research and development, G. Robert DiMarco, and to require Reynolds to show cause why it should not be held in civil contempt with regard to certain conduct during DiMarco's first deposition on August 14, 2001 (**doc. 433**). Fourth, plaintiff seeks to compel further deposition testimony by Arnold Henson, former counsel for American's parent corporation (**doc. 450**).

During the final pretrial conference in this case on September 28, 2001, the court inquired of counsel concerning the above-referenced motions. The court tentatively stated and explained its proposed rulings. The

---

1. Defendant Brown & Williamson Tobacco Corporation is American's successor by merger.

court's comments on the record during the pretrial conference are incorporated herein by reference. In that context, and as will be explained in more detail below, plaintiff's second motion (concerning witness Goerlitz) will be granted. The other motions will be denied.

II. Defendants' Discovery Disclosures.

On September 1, 1994 (shortly after this case was filed), in accordance with an order entered by the Hon. John W. Lungstrum, District Judge (doc. 9), Reynolds and American filed their initial discovery disclosures pursuant to Rule 26(a)(1) (docs. 17 and 19, respectively). Consistent with the undersigned magistrate judge's directive during a status conference on April 23, 2001 (doc. 386), Reynolds and American supplemented those disclosures pursuant to Rule 26(e) in May 2001 (*see* docs. 394 and 396, respectively).

The gist of the instant motion for sanctions is that defendants' September 1994 and May 2001 disclosure pleadings, when compared and examined, clearly demonstrate that defendants "stonewalled" plaintiff during the protracted discovery phase of this case. On that basis, plaintiff now asks the court to "punish" defendants. Plaintiff requests that the court impose sanctions as follows: (1) prohibit defendants from utilizing at trial any information not identified in their initial disclosures; (2) inform the jury of defendants' failure to meet their disclosure requirements; (3) require defendants to pay plaintiff's reasonable expenses (including attorneys' fees) caused by the allegedly untimely disclosures; and/or (4) any other sanctions deemed appropriate by the court.

Plaintiff relies on Rule 37(c)(1), which provides:

A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed. In addition or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorneys'

fees caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B) and (C) and may include informing the jury of the failure to make the disclosure.

Under Fed.R.Civ.P. 37(a)(2)(A), a motion for sanctions based on a failure to make disclosures required by Rule 26(a) "must [i.e., shall] include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action" (emphasis added). Further, this court's rules provide:

The court will [i.e., shall] not entertain any motion to resolve a discovery dispute pursuant to Fed.R.Civ.P. 26 through 37 ... unless counsel for the moving party has conferred or made a reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. Every certification required by Fed. R. Civ. P .... 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes *shall* describe with particularity the steps taken by all counsel to resolve the issues in dispute.

A "reasonable effort to confer" ... requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so.

D. Kan. Rule 37.2 (emphasis added).

Plaintiff's motion for sanctions is unaccompanied by any statement, let alone the required certification, concerning what efforts he or his attorneys made to resolve this dispute before involving the court. During the September 28, 2001 pretrial conference in this case, plaintiff's counsel conceded that his motion was not preceded by *any* attempt to confer. Without citing any authority, he argued that the circumstances of this case were unique and thus there was nothing to confer about, i.e., any such conference among counsel would have been futile, because in effect it was plaintiff's belief that the only complete remedy would include defendants reimbursing plaintiff for all of the substantial fees and expenses incurred in the prosecution of this case. The court respectfully disagrees. The

state of the record clearly precludes the court from even considering whether to grant plaintiff any relief. That is, the requirement that counsel confer about discovery disputes before filing such motions is mandatory under Fed.R.Civ.P. 37(a)(2)(A) and D. Kan. R. 37.2. Accordingly, plaintiff's motion for sanctions must be denied on that basis.

This case is approaching trial fairly soon. Lest plaintiff be inclined to re-file the instant motion after engaging in some token effort to resolve his previously stated complaints, the court will proceed to reach the merits of this motion.

■ Notably, in plaintiff's brief in support of the motion, he acknowledges that "[p]arties need not supplement information otherwise made known in writing or during the discovery process." *See* doc. 427 at 3 (citing Fed.R.Civ.P. 26(e), Advisory Committee Notes, 1993 Amendments). Defendants' brief in opposition to the instant motion (doc. 438), read in tandem with the voluminous supporting appendix (doc. 439), seem to suggest that defendants have complied reasonably with the disclosure requirements of Rule 26(a)(1) and the supplementation requirements of Rule 26(e). Through a multitude of sources at various times, spanning the many years that this case has been in pretrial discovery, the record suggests that plaintiff and his attorneys have had access to at least substantially all of the information referred to in the defendants' May 2001–disclosures. Despite the parties' fairly exhaustive briefing of virtually every motion filed in this contentious case, plaintiff elected not to file any reply brief taking issue with defendants' factual representations concerning what discovery has been provided, when it was provided, and under what circumstances it was provided. At this juncture at least, the record simply does not support plaintiff's contention that defendants' disclosures are inadequate.

Finally, based on a review of the parties' respective written submissions, the court alternatively finds that, to the extent that there may have been any technical failure to make full disclosure by defendants, given the

procedural history of this case, that failure was "substantially justified." The court is wholly unpersuaded by plaintiff's conclusory claims of prejudice in this regard, and thus, the court finds that any nondisclosure by defendants was "harmless." *See* Fed. R.Civ.P. 37(c)(1).

For all the foregoing reasons, the requested imposition of sanctions under Rule 37(c)(1) is unwarranted.

### III. Witness David Goerlitz.

The record reflects that the court has made repeated efforts to encourage plaintiff to pare down his lists of intended witnesses and exhibits to those that realistically will be used at trial. During a status conference on April 23, 2001, the court established a deadline of April 27, 2001 for plaintiff to file his *final* trial witness list (doc. 386 at 3–4). Plaintiff timely filed that list (doc. 387). On August 20, 2001, roughly four months after filing that list, plaintiff filed the instant motion for leave to amend the list to include David Goerlitz, who for a time worked as a model in certain advertisements for Reynolds' Winston-brand of cigarettes. It should be noted here that there is no evidence or suggestion that Goerlitz ever actually was employed by Reynolds.

Plaintiff complains that Reynolds improperly failed to disclose Goerlitz as a witness earlier. Thus, plaintiff argues, his lawyers were unaware of Goerlitz such that Goerlitz could be included on a witness list. Plaintiff's counsel indicate in the instant motion that, on July 26, 2001, they came across an article in the *New York Times* newspaper about Goerlitz's testimony in another matter to the effect that Reynolds' marketing executives, although they did not smoke, had made a statement that the company targeted sales toward certain allegedly vulnerable classes of people, i.e., "the young, the poor, the black, and the stupid." In that context, plaintiff now wants to add Goerlitz to its witness list and leave to take his deposition, even though the deadlines for completion of discovery and filing final witness lists have passed.[2]

---

**2.** Presumably subject to the court's ruling on this issue, plaintiff already has noticed Goerlitz for a

deposition on December 5, 2001 (doc. 449).

Reynolds opposes plaintiff's motion (*see* doc. 442). Reynolds argues that, since the court already has dismissed all of plaintiff's "advertising-related" claims, *see Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1527–28 (D.Kan.1995), Goerlitz does not have any testimony relevant to this case. Further, Reynolds argues that, despite plaintiff's suggestion to the contrary, Goerlitz's identity was disclosed much earlier during this litigation, and plaintiff has shown neither good cause nor excusable neglect for adding Goerlitz as a witness at this late date. Finally, Reynolds argues that Goerlitz should not be added to plaintiff's witness list at this juncture, because in such event defendants would need to name yet additional witnesses to rebut any testimony by Goerlitz along the lines indicated above.

Defendants' written opposition to the instant motion seems to suggest quite strongly that the existence of Goerlitz as a potential witness at a minimum probably *should* have been known to plaintiff's counsel several years ago, as a result of discovery conducted in this and other similar tobacco cases. Specifically, in 1995, during the first general discovery period in this case, Reynolds produced to plaintiff certain documents containing Goerlitz's testimony before Congress in July 1989 when he made the statement cited by plaintiff in his motion about the alleged targeting of cigarettes to "the young, the poor, the black, and the stupid." Further, defendants point out that the Goerlitz story is contained in more than 100 documents on Reynolds' tobacco litigation document website, as well as in documents contained in the so-called Minnesota Depository, to which plaintiff admits he had access since mid–1998.

During the September 28, 2001–pretrial conference, plaintiff's counsel essentially took the position that, even assuming for the sake of argument that defendants did produce documents concerning Goerlitz back in 1995, plaintiff did not copy them, presumably because they were passed over given the sheer volume of what defendants produced. Plaintiff's motion acknowledges that, under Fed. R.Civ.P. 6(b)(2), "good cause" must be demonstrated to add a witness under these circumstances. As plaintiff's counsel candidly acknowledged during the pretrial conference, plaintiff actually must demonstrate both "cause" *and* "excusable neglect," because the deadline for filing final witness lists expired about four months before the motion concerning Goerlitz was filed. In this regard, Fed.R.Civ.P. 6(b)(2) provides:

When by these rules or by ... order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect* (emphasis added).

In the case of *In re Sunwest Hotel Corp.*, 1998 WL 982905, *10 (D.Kan. Sept.29, 1998), Senior District Judge Sam A. Crow explained:

The Supreme Court in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), established a flexible balancing test for analyzing excusable neglect under Bankruptcy Rule 9006(b)(1). "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." 507 U.S. at 388, 113 S.Ct. at 1495. " '[E]xcusable neglect' is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." 507 U.S. at 392, 113 S.Ct. at 1496. On the other hand, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Id.* In determining whether neglect is excusable, the court should consider "all relevant circumstances surrounding the party's omission" including these four specific factors: (1) the danger of prejudice to the other side; (2) the length of delay and its potential impact on proceedings; (3) the reason for the delay and

whether it was in the control of the party; and (4) whether the movant acted in good faith. *Id.* at 394–95, 113 S.Ct. at 1497–98. Control over the circumstances of the delay is "a very important factor-perhaps the most important single factor-in determining whether neglect is excusable." *City of Chanute Kansas v. Williams Nat. Gas Co.,* 31 F.3d 1041, 1046 (10th Cir.1994), *cert. denied,* 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995).

■ A showing of "good cause" requires a proffer of the reasons for the failure to file the appropriate motion within the deadlines established by the scheduling order, accompanied by an affirmative demonstration of good faith on the part of the movant. Such is required in order to permit the court to evaluate whether the statutory requirement of "good cause" exists. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Putnam v. Morris,* 833 F.2d 903, 904 (10th Cir.1987).

The court disagrees with plaintiff that Reynolds necessarily was obligated to disclose Goerlitz, specifically by name, as a potential witness in this case. That is, in light of the above-described dismissal of plaintiff's "advertising-related" claims, it is somewhat difficult to understand why plaintiff seems so certain that Reynolds should have listed Goerlitz as a witness.

■ Insofar as plaintiff's own listing of Goerlitz as a witness is concerned, the court is inclined to give plaintiff's counsel the benefit of the doubt here. That is, the challenge of marshaling all of the documents produced by defendants during discovery in this case no doubt has been considerable. It seems fairly logical that, if plaintiff's counsel actually earlier had come across and read documents concerning Goerlitz's Congressional testimony, those documents would have been copied, because of their obvious jury appeal. Although the court ultimately may rule that Goerlitz cannot testify at trial (based on dismissal of the above-referenced claims or otherwise), the danger of serious prejudice to Reynolds from merely adding Goerlitz to plaintiff's witness list and deposing him is not apparent. Goerlitz's addition as a potential

witness certainly will not delay the scheduled trial of this case on February 5, 2002. Counsel for plaintiff's explanation for the delay in naming Goerlitz, while frustrating, is understandable. There is no basis to infer bad faith on the part of plaintiff's counsel given the state of the record.

As indicated above, defendants point out that, if plaintiff is granted leave to add Goerlitz as a witness at this late date, fairness dictates that defendants should be granted leave to endorse additional witnesses on the subject of Goerlitz's proposed testimony. During the September 28, 2001–pretrial conference, Reynolds' counsel stated that, as a practical matter, however, this would be limited to rebutting that the statement attributed by Goerlitz to a Reynolds executive actually was made by an employee of the company. This, it seems, would not unduly protract the preparation of this case for trial.

For of the foregoing reasons, the court finds, albeit somewhat reluctantly, that plaintiff has demonstrated good cause and excusable neglect sufficient to add Goerlitz as a witness. Plaintiff's motion concerning Goerlitz thus will be granted. Plaintiff may go forward with Goerlitz's noticed December 5, 2001 deposition. However, within five calendar days of that deposition, Reynolds may counter-designate appropriate rebuttal witnesses.

The court does *not* rule at this time that plaintiff necessarily will be allowed to use Goerlitz as a trial witness. Presumably the court will address that issue in connection with a motion in limine by Reynolds.

### IV. The DiMarco Deposition.

On August 14, 2001, in Winston–Salem, North Carolina, plaintiff's counsel deposed G. Robert DiMarco, who served as Reynolds' senior vice-president of research and development from 1982 until 1992. DiMarco is no longer employed by Reynolds.

The narrow focus of plaintiff's motion to compel concerning DiMarco's deposition concerns the assertion of an attorney-client privilege objection by Reynolds' counsel to perhaps a few questions posed by plaintiff's counsel about the contents of one document.

That document, which is dated April 19, 1983, consists of a report concerning Reynolds' R & D department, and in particular certain beliefs held by DiMarco. The report was prepared by Reynolds' in-house counsel. Reynolds earlier objected to plaintiff's listing of this document as a trial exhibit, based on attorney-client privilege and attorney work product immunity. The court overruled those objections. *See Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 673–74 (D.Kan.2001). Nevertheless, during the DiMarco deposition, when plaintiff's counsel asked the witness certain questions about the exhibit, an attorney-client privilege objection was asserted.

■ Oddly, neither plaintiff's motion (doc. 433) nor his supporting memorandum (doc. 434) provides any specifics about what questions were asked and what objections were asserted. Plaintiff evidently deemed it unnecessary to favor the court with a copy of the pertinent portions of the DiMarco deposition transcript. On that basis alone, the court overrules plaintiff's motion for failure to comply with Fed.R.Civ.P. 7(b)(1) ("motion shall state with particularity the grounds therefor"). However, in the interest of getting this case in a trial-ready posture, the court will proceed to address the merits to some extent, as defendants' brief in opposition to the instant motion (doc. 447) provides for the record a copy of the DiMarco deposition transcript and an explanation of what transpired during the deposition. Plaintiff did not file a reply brief or otherwise take issue with defendants' account of what transpired during DiMarco's deposition.[3]

As explained in Section II above, plaintiff's motion for sanctions concerning defendants' disclosures is procedurally defective because it fails to include the required certification that counsel conferred about the dispute before involving the court. Plaintiff's motion concerning the DiMarco deposition includes a "certification" pursuant to Fed.R.Civ.P. 37(a)(2)(B) that plaintiff made a good faith effort to resolve the dispute before filing the motion. But, having reviewed the DiMarco deposition transcript, and in particular the colloquy between counsel at pages 103–05, the court is unpersuaded that the parties actually conferred. That is, what really occurred is that the lawyers merely staked out legal positions. Even though Reynolds' counsel ultimately only objected to the way in which one particular question had been framed by plaintiff's counsel—implicitly inviting plaintiff's counsel to rephrase the question in a way that would work around the asserted objection—plaintiff's counsel elected not to go that route. Moreover, despite what is *specifically* envisioned by D. Kan. Rule 37.2, and despite plaintiff's conclusory certificate to the contrary, the record does *not* show that the parties actually conversed, compared views, consulted, deliberated, or sought to arrive at any creative compromise to the dispute. Accordingly, plaintiff's vague and unspecific motion must be denied on this basis as well.

Nevertheless, the court will not end its analysis here. Having reviewed the DiMarco transcript, the court is convinced, firmly so, that this entire issue is essentially a "tempest in a teapot." The transcript, read as a whole, and as defendants point out pages 82–83, 89, 92–93, 100–101, and 108–09 in particular, show that plaintiff's counsel essentially obtained the same information from DiMarco in response to various other questions posed on the same subject. Plaintiff has failed to demonstrate what useful purpose would be served by reconvening the DiMarco deposition.

### V. The Henson Deposition.

■ This motion by plaintiff was filed on September 25, 2001, stridently complaining about certain conduct of counsel during the deposition of non-party witness Arnold Hen-

---

3. The deadline for plaintiff to file a reply brief with regard to this motion was September 27, 2001. None was filed. As a result, in addition to not disputing defendants' account of what happened during DiMarco's deposition, and not disputing defendants' argument under Fed. R.Civ.P. 45 that this dispute should be resolved by the federal court in North Carolina which issued the subpoena for non-party witness DiMarco (an issue which the court, for practical reasons, elects not to address here), the state of the record is such plaintiff *still* has not precisely stated what objections supposedly were improperly asserted during the DiMarco deposition, such that the court could rule in his favor even if it were so inclined.

son on August 29, 2001 in Eastham, Massachusetts. As discussed during the September 28, 2001–pretrial conference, the court believes that this motion should be denied as premature. Nothing useful would be accomplished by awaiting the inevitably lengthy written response by defendants. Simply put, despite the certificate attached to plaintiff's motion, the record does not support the notion that good faith efforts to confer have been made to resolve the dispute which led to the filing of the motion.

Unlike the situation with the DiMarco deposition, at least here plaintiff has opted to provide the court a copy of the transcript of the Henson deposition. That transcript does not reflect favorably on counsel for non-party witness Henson. The court will not endeavor to catalogue all of the violations of Fed. R.Civ.P. 30(d)(1) by counsel for Mr. Henson. But, it suffices here to say that those violations were serious, numerous, and perhaps intentional.[4]

Counsel for plaintiff, perhaps out of frustration, compounded the problem. That is, he responded to the improper tactics employed by Mr. Henson's counsel by asking questions which were, in various combinations, disjointed, long winded, and largely rhetorical and argumentative. Predictably, from there, things quickly went from bad to worse.

During the pretrial conference on September 28, 2001, the court provided counsel of record a set of written deposition guidelines, together with some informal guidance on whether-and how-the Henson deposition might be reconvened. Along the same lines, the court would respectfully suggest that all counsel involved read and take to heart the observations concerning how to conduct depositions as expressed quite concisely and eloquently in two of the cases attached as exhibits to plaintiff's supporting memorandum. *Oleson v. Kmart Corp.,* 175 F.R.D.

570, 573–74 (D.Kan.1997); *Ethicon Endo–Surgery v. U.S. Surgical Corp.,* 160 F.R.D. 98, 99–100 (S.D.Ohio 1995). In any event, if the Henson deposition is reconvened (keeping in mind that the court is not ruling that that necessarily should occur), counsel of record, and presumably Mr. Henson's counsel, should confer further about the issues framed in plaintiff's motion. If those efforts prove unfruitful and the parties remain at an impasse, of course plaintiff may re-file his motion.

### VI. Conclusion.

For all the reasons indicated above, plaintiff's motion for sanctions concerning defendants' discovery disclosures and supplementations (**doc. 423**) is denied. Plaintiff's motion for leave to add David Goerlitz his witness list, and to take Goerlitz's deposition (**doc. 432**), is granted. Plaintiff's motion to compel further deposition testimony of former Reynolds vice-president G. Robert DiMarco, and to require Reynolds to show cause why it should not be held in civil contempt (**doc. 433**), is denied. Plaintiff's motion to compel further deposition testimony of Arnold Henson (**doc. 450**) is denied, without prejudice.

---

4. During the September 28, 2001 pretrial conference, in response to the court's inquiry, defense counsel of record indicated that the lawyer who produced Mr. Henson for deposition was an experienced trial lawyer. That said, the Henson deposition transcript only allows two mutually exclusive inferences: (1) Mr. Henson's counsel, who is not of record in this litigation, is familiar with Rule 30(d) but decided to ignore it for strategic or tactical reasons; or (2) Mr. Henson's lawyer has not read Rule 30(d) and is unaware of how a deposition is to be properly defended. Although neither inference is favorable, the former is more plausible and hence more disturbing.